In the Matter of HARRY N. REEVES, Respondent, against CHARLES A. CROWNSHIELD, Appellant, Impleaded with Another.

Submitted March 5, 1937; decided April 27, 1937.

*Emanuel Redfield* for appellant. A State law which in its operation interferes with a Federal instrumentality is void to that effect. (*McCullough* v. *Maryland,* 4 Wheat. 316; *Collector* v. *Day,* 11 Wall. 113; *Dobbins* v. *Commissioners,* 16 Pet. 435.) The statute in effect provides for imprisonment for debt and, therefore, deprives appellant of his liberty and property without due process of law. (*O'Gara* v. *Kearney,* 77 N. Y. 423.)

*Leopold Freidin* for respondent. Section 793 of the Civil Practice Act, which permits the court to make an order directing the judgment debtor to make payments in

installments on account of the judgment, is constitutional, although affecting a Federal employee. (*Bool Floral Co. v. Coyne,* 284 N. Y. Supp. 960; *Kaplan v. Peyser,* 247 App. Div. 660; *Bramhall v. Ferris,* 14 N. Y. 41; *Tolles v. Wood,* 99 N. Y. 616; *Zinke v. Hipkins,* 233 N. Y. 516; *Herts Bros. v. Tiffany,* 118 App. Div. 215; *Brearley School v. Ward,* 20 N. Y. 358; *Dibner v. Cousminer,* 283 N. Y. Supp. 369; *Wyman v. Mitchell,* 1 Cow. 316; *McCoun v. N. Y. C. & H. R. R. R. Co.,* 50 N. Y. 176; *Ridder v. Ridder,* 246 App. Div. 577; *National City Bank v. Clarke,* 246 App. Div. 636; *Williamson v. Drogaris,* 288 N. Y. Supp. 179; *Loma v. Cripple,* 265 N. Y. Supp. 125.) The order of contempt made pursuant to section 801 of the Civil Practice Act and other sections applicable thereto is constitutional. (*Williamson v. Drogaris,* 288 N. Y. Supp. 179; *Matter of Consumers Poultry Dealers v. Podberesky Bros., Inc.,* 244 App. Div. 754; *Fall Brook Coal Co. v. Hecksher,* 42 Hun, 534; *Moffat v. Herman,* 116 N. Y. 131; *Ives v. South Buffalo Ry. Co.,* 201 N. Y. 271.)

FINCH, J. The uncollectibility of money judgments has ever been a subject of concern to bench and bar. A large part of the statute law of this State is designed to enable a judgment creditor to obtain satisfaction upon his money judgment. That a large percentage of these money judgments have remained uncollectible has been confirmed by statistical surveys. (Study of Civil Justice in New York [Survey of Litigation in New York], Johns Hopkins University Institute of Law [1931].) Many debtors who were in a position to pay have evaded their legal obligations by unlawful and technical means. Discontent with this situation resulted in agitation for reform in collection procedure. (Levien, The Collection of Money Judgments, New York Legislative Document, No. 50 F [1934].) Finally, in 1935, upon the recommendation of the Judicial Council, a law was enacted creating a new mode of enforcing the payment of judgments (Laws of 1935, ch. 630).

Section 793 of the Civil Practice Act now provides that, in addition to the garnishee provisions of the old law, the court may make an order directing a judgment debtor to make payments in installments out of the income which he receives. Such orders must be made upon notice to the judgment debtor and after he has had an opportunity to show inability to pay, and with due regard to the reasonable requirements of the judgment debtor and his family, as well as of payments required to be made by him to other creditors. Section 801 of the Civil Practice Act provides that refusal to pay after such an order of the court is punishable as a contempt. Statutes somewhat similar are to be found in Massachusetts, England and Nova Scotia (General Laws, Mass., ch. 224, § 16; Debtor's Act, 1869, § 5 [32 & 33 Victoria, ch. 62], see Annual Practice .[1937], p. 764; Nova Scotia Rev. Stat. [1923, vol. 2] ch. 232, § 29.)

This new procedure was invoked against the appellant, in an attempt to collect a judgment for approximately $400. The examination in supplementary proceedings disclosed that he was employed by the Federal government as a steamship inspector at a salary of $230 per month, less a small pension deduction. He has no children, and the whereabouts of his wife are unknown. Aside from $48 a month paid as rent and his living expenses, he has no financial obligations. The court ordered the appellant to pay installments of $20 per month until the judgment was satisfied. Upon his failure to pay, he was held in contempt and fined the sum of $20, commitment being provided for in default of payment.

An appeal was taken directly to this court from the City Court of New York city on the ground that a constitutional question was involved.

By stipulation it was provided that the appeals from the order directing payment, and the order adjudging the appellant in contempt, were to be consolidated and treated as one appeal. A final order in supplementary

proceedings is appealable to this court, since it is a final order in a special proceeding. (Civ. Prac. Act, §§ 773, 774.) The order in the case at bar is a final order in a special proceeding. (Civ. Prac. Act, § 801.)

The judgment debtor challenges the constitutionality of section 793 and section 801 on the ground that in effect they provide for imprisonment for debt. It is admitted that neither the State nor the Federal Constitutions contain provisions expressly prohibiting imprisonment for debt, and that the statutory provision forbidding imprisonment for debt found in section 21 of the New York Civil Rights Law (Cons. Laws, ch. 6) excepts cases otherwise specially prescribed by law. It is asserted, however, that imprisonment for debt is barred by the due process clauses of the State and Federal Constitutions. No cases so holding are cited, but reliance is had upon vague dicta found in *Bailey* v. *Alabama* (219 U. S. 219, 244) and *Henderson* v. *Mayor* (92 U. S. 259, 268). Whatever doubt there may exist as to whether imprisonment for debt without regard to ability to pay may be treated as a deprivation of liberty without due process of law (*Eikenberry & Co.* v. *Edwards,* 67 Iowa, 619), there can be no doubt that imprisonment for failure to obey an order of a court to make payment out of income, which order is made with due regard to the needs of the debtor and his family, is not violative of the due process clause.

" In one form or another prohibitions against imprisonment for debt are found in most, if not all, of our state constitutions. Usually these prohibitions allow exceptions in cases of fraud, willful injury to persons or property, or of fines or penalties imposed by law. Courts, in construing such provisions, have frequently been called upon to determine to what extent they invalidated statutes authorizing civil executions against the body of a judgment debtor. Their manifest intent is to exempt from imprisonment the honest debtor who is poor, and in good faith unable to pay his debts. This shield of protection should not, therefore, be allowed to be interposed for the

benefit of debtors who, being able to pay, yet seek to avoid doing so by assigning or concealing their effects, or by eluding judicial process. Consequently, courts have generally, and quite properly, upheld the validity of statutes authorizing the imprisonment of a debtor after the return of an execution unsatisfied and proof that he has property legally applicable to the discharge of his liabilities. The imprisonment in such a case is not for debt, but for the neglect and refusal to perform a moral and legal duty, the performance resting in the ability of the debtor.

\*    \*    \*    \*    \*    \*    \*

" The amelioration of the condition of poor debtors has also proceeded through the enactment of insolvency laws. But in construing legislation having this end in view, courts cannot keep too constantly in mind the fundamental theory upon which it is based, namely, that none of the exemptions thereby afforded debtors should enable them to avoid the payment of debts when able to pay them." (3 Freeman on The Law of Executions [3d ed.], p. 2394 *et seq.*)

In the case at bar the judgment debtor has not complained that the order directing the payment of $20 per month is unjust, inequitable or harsh. His position is an arbitrary refusal to pay. It is based upon the ground that the courts are powerless to compel him to pay out of his income an amount fixed after deducting the sum necessary for his reasonable needs.

The Legislature has seen fit to provide a creditor with a direct remedy for the collection of his just debts. A refusal to recognize such an order by the judgment debtor entitles the creditor to move to have him punished for contempt. Without this right, there would be no power in the court to enforce its order. To compel the judgment debtor to obey the order of the court is not imprisonment for debt, but only imprisonment for disobedience of an order with which he is able to comply.

His refusal is contumacious conduct, the same as a refusal to obey any other lawful order of the court.

It also is asserted that the application of this law to the appellant is unconstitutional, since it interferes with the operation of a Federal instrumentality. To sustain this contention, reference is made to the cases declaring State laws taxing the salaries of Federal officers unconstitutional. (*Collector* v. *Day*, 11 Wall. [U. S.] 113; *Dobbins* v. *Commissioners of Erie County*, 41 U. S. [16 Pet.] 435.) Analysis shows that these cases are not in point. The true basis for declaring a State tax on the salaries of Federal officers unconstitutional is that since the Federal government presumably finds it necessary to pay its officers a salary based upon the value of their services, the State should not be permitted to tax the salaries thereby reducing the compensation and making it necessary for the Federal government to increase the salaries paid by it.

Thus in *Dobbins* v. *Commissioners of Erie County* (41 U. S. [16 Pet.] 435, at p. 448) the Supreme Court of the United States said: " Is not compensation the means by which his services are procured and retained? It is true it becomes his when he has earned it. If it can be taxed by a state as compensation, will not Congress have to graduate its amount, with reference to its reduction by the tax? * * * It would destroy also all uniformity of compensation * * *. The powers of the national government can only be executed by officers whose services must be compensated by Congress. The allowance is in its discretion. The presumption is that the compensation given by law is no more than the services are worth, and only such in amount as will secure from the officer the diligent performance of his duties." (See, also, *Evans* v. *Gore*, 253 U. S. 245, 254.)

It is true that the wages of a Federal employee cannot be garnisheed but once his wage has been paid to him a State is not prohibited from ordering him to apply a portion of such income towards the payment of his just

debts. The moment the salary is received it becomes a part of the general income of the owner. If he should therewith purchase property the property could be taken under execution for the payment of a judgment against the owner. No reason appears for exempting the income while still held as money and not exempting it when it has been converted into property. Thus it has been held that a tax on the property of a Federal employee may be applied to his salary which he has deposited in a bank account. (*Dyer* v. *City of Melrose*, 215 U. S. 594.) Similarly a statute barring the attachment of pension due or to become due has been held not to exempt property purchased with the pension money. (*McIntosh* v. *Aubrey*, 185 U. S. 122.)

The argument that the imprisonment of the debtor for failure to comply with the order to pay will result in interference with the Federal agency which employs him cannot be sustained. Certainly his Federal position does not exempt him from imprisonment for crimes which he may commit. It is equally clear that it does not give him the privilege to disobey with impunity the orders of a State court.

It follows that the orders appealed from should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur.

Orders affirmed.