In the Matter of the Estate of BESSIE KRAMSKY, Deceased.

Surrogate's Court, Kings County, December 7, 1939.

*Jacob Heller,* for Beatrice Schechter, as administratrix, etc.

*Mehl Brothers,* for the respondent.

WINGATE, S. The extended research of the court respecting judicial interpretations and applications of section 84 of the Surrogate's Court Act, in so far as it applies to the enforcement of decrees against non-fiduciary parties by commitment for contempt, has yielded the astonishing result that of the more than five score opinions which have been studied, only four contain any reference to the subject, and all of these statements are purely negative and little better than dicta. This dearth of authority is the more noteworthy by reason of the fact that such situations are continually arising and it would have been supposed that judicial determinations relating to the subject would have been multitudinous. In view of the situation disclosed, the conclusions attained by the court in its study may prove of some general interest.

The first comprehensive enactment on the subject of the enforcement of judicial awards through the medium of proceedings for punishment for contempt, was contained in part III, chapter VIII.

title 13 of the Revised Statutes, enacted in 1828. So far as presently material, this reads:

" § 1. Every court of record shall have power to punish, by fine and imprisonment, or either, any neglect or violation of duty, or any misconduct, by which the rights or remedies of a party in a cause or matter depending in such court, may be defeated, impaired, impeded or prejudiced, in the following cases:

" 1. All attorneys, counsellors, solicitors, clerks, registers, sheriffs, coroners, and all other persons in any manner duly selected or appointed to perform any judicial or ministerial services, for any misbehavior in such office or trust, or for any wilful neglect or violation of duty therein; for disobedience of any process of such court, or of any lawful order thereof, or of any lawful order of a judge of such court, or of any officer authorized to perform the duties of such judge: * * *

" 3. Parties to suits, attorneys, counsellors, solicitors and all other persons, for the non-payment of any sum of money ordered by such court to be paid, in cases where by law execution cannot be awarded for the collection of such sum; and for any other disobedience to any lawful order, decree or process of such court: * * *

" § 2. When any misconduct, punishable by fine and imprisonment, as declared in the last section, shall be committed in the immediate view and presence of the court, it may be punished summarily, by fine or imprisonment, or both, as hereinafter prescribed.

" § 3. When such misconduct is not so committed, the court shall be satisfied by due proof, by affidavit, of the facts charged, and shall cause a copy of such affidavits to be served on the party accused, a reasonable time to enable him to make his defense; except in cases of disobedience to any rule or order requiring the payment of money, and of disobedience to any subpoena.

" § 4. When any rule or order of a court shall have been made for the payment of costs, or any other sum of money, and proof, by affidavit, shall be made of the personal demand of such sum of money, and of a refusal to pay it, the court may issue a precept to commit the person so disobeying to prison, until such sum, and the costs and expenses of the proceeding, be paid."

The first section of this enactment was bodily carried into the present Judiciary Law, and, with immaterial verbal changes, is now contained in section 753 thereof. It has, therefore, been the law of the State continuously for a period of more than one hundred and eleven years.

Two matters are noteworthy in an evaluation of this enactment at the time it was originally placed on the statute books. The first is that authority to enforce a pronouncement by proceedings for contempt was accorded only to a " court of record." Since Surrogates' Courts were not courts of record and did not become such until more than half a century later, the statute did not apply to them. (*Matter of Watson* v. *Nelson*, 69 N. Y. 536, 541.)

The second outstanding feature is that in the vast preponderance of situations, enforcement by contempt was permissible only " in cases where by law execution cannot be awarded for the collection of such sum." As a matter of first impression, it might have been thought that section 4 of the statute was capable of a broader interpretation. In *Myers* v. *Becker* (95 N. Y. 486, 493), however, it was determined that section 4 must be construed in harmony with section 1, " and authorizes the precept mentioned only in cases where an execution cannot be issued. It does not, therefore, apply to a case where money has been ordered to be paid by a final judgment."

When the Code of Procedure was adopted in 1848, it provided in section 240 (which was renumbered section 285 in 1849) that " Where a judgment requires the payment of money, or the delivery of real or personal property, the same may be enforced in those respects by execution, as provided in this title. Where it requires the performance of any other act, a certified copy of the judgment may be served upon the party against whom it is given, or the person or officer who is required thereby, or by law, to obey the same, and his obedience thereto enforced. If he refuse, he may be punished by the court as for a contempt."

Upon the enactment of the Code of Civil Procedure, the provisions of the Code were expanded and incorporated in sections 1240 and 1241, which were carried forward unchanged into sections 504 and 505 of the Civil Practice Act, as presently in force.

The former provides that a judgment may be enforced by execution: " 1. Where it is for a sum of money in favor of either party; or directs the payment of a sum of money. * * *

" 3. In an action to recover a chattel, where it awards a chattel to either party."

The latter enacts: " In either of the following cases a judgment may be enforced by serving a certified copy thereof upon the party against whom it is rendered, or the officer or person who is required thereby or by law to obey it; and, if he refuses or wilfully neglects to obey it, by punishing him for a contempt of the court:

" 1. Where the judgment is final and cannot be enforced by execution, as prescribed in the last section.

" 2. Where the judgment is final and part of it cannot be enforced by execution, as prescribed in the last section, in which case the part or parts which cannot be so enforced may be enforced as prescribed in this section. * * *

" 4. Where the judgment requires the payment of money into court, or to an officer of the court; except where the money is due upon a contract, express or implied, or as damages for non-performance of a contract. In a case specified in this subdivision, if the judgment is final, it may be enforced, as prescribed in this section, either simultaneously with, or before, or after the issuing of an execution thereupon, as the court directs."

This review demonstrates a continuous policy of the State, so far as judgments of the Supreme Court are concerned, to deny a remedy for enforcement of a judgment by proceedings for contempt as to any portion of a pronouncement which sounds in money, except where the payment is to be made to the court itself, or to one of its officers, and is not founded upon a contract, and the decisions of the Supreme Court have uniformly upheld this principle.

As illustrative of the wide range of situations in which enforcement of judgments of the Supreme Court by contempt has been denied, and the successful party remitted to remedy by execution, the following may be noted: restitution of moneys paid on a judgment, subsequently reversed (*Marlee, Inc.*, v. *Bittar*, 257 N. Y. 240, 243: *O'Gara* v. *Kearney*, 77 id. 423, 425, 426; *Le Gros* v. *Chain Shirt Shops, Inc.*, 187 App. Div. 368, 370); moneys found due on a partnership accounting (*People ex rel. Bellovin* v. *Sheriff of Kings County*, 246 App. Div. 623; affd., 270 N. Y. 631), even though payment had been directed to a receiver (*Walford* v. *Harris*, 78 Hun, 346, 347); moneys due an attorney (*Kane* v. *Rose*, 87 App. Div. 101, 103; affd., 177 N. Y. 557), paid on a fraudulent mortgage (*Hennig* v. *Abrahams*, 246 App. Div. 621, 622; affd., 270 N. Y. 626), received under a void assignment for the benefit of creditors (*Myers* v. *Becker*, 95 N. Y. 486, 492, 493), recovered by reason of a misappropriation of corporate funds (*Nelson* v. *Hirsch*, 264 N. Y. 316, 318) or pursuant to a judgment creditor's action (*Siegel* v. *Seidenberg, Keroes & Dratfield, Inc.*, 237 App. Div. 129) or payable to a receiver in sequestration proceedings (*General Electric Co.* v. *Sire*, 88 App. Div. 498, 501). Many additional determinations have reiterated the same principles. (See *e. g., Cohen* v. *Cohen*, 252 App. Div. 885, 886; *S. & N. Trading Corp.* v. *Amazon Building Corp.*, 236 id. 739; *Wagenheim* v. *Ocean Parkway Properties, Inc.*, 235 id. 642; *Wasserman* v. *Lupis*, 223 id. 773.)

More striking from the standpoint of one steeped in the tradition of Surrogates' ·Courts of the strict accountability of fiduciaries, are

the decisions which have denied enforcement by contempt of judgments against a trustee who admittedly had the money in his hands for the satisfaction of the sums awarded (*Harris* v. *Elliott*, 163 N. Y. 269, 274, 275) and against a general guardian (*Coffin* v. *Coffin*, 161 App. Div. 215, 218) or an administrator (*Gray* v. *Cook*, 24 How. Pr. 432, 434) who were in similar positions.

The instances in which enforcement by contempt have been permitted have been comparatively few in number and include two directions to attorneys to turn over funds (*Forstman* v. *Schulting*, 108 N. Y. 110, 112; *Matter of McBride*, 6 App. Div. 376, 377) and a direction for payment to a receiver (*Gildersleeve* v. *Lester*, 68 Hun, 535, 536; affd. on opinion below, 139 N. Y. 608). In addition, of course, a direction to do specific acts such as accepting a deed upon purchase at a foreclosure sale (*Burton* v. *Linn*, 21 App. Div. 609, 611) have been enforced by incarceration, although the seller was remitted to execution for the recovery of the purchase price. (*People ex rel. Sarlay* v. *Pope*, 230 App. Div. 649, 650.)

Since it is uncontrovertibly established that a decree of a Surrogate's Court for the payment of money by a fiduciary is enforcible by imprisonment for contempt (*Bijur* v. *Jacoby*, 260 N. Y. 289, 294), it is obvious that the rules in this regard which pertain in the Surrogate's Court must differ materially from those in vogue in courts of general jurisdiction.

The clue to the origin of this difference is found in the decision of the Court of Appeals in *Matter of Watson* v. *Nelson* (69 N. Y. 536), decided in May, 1877. The question there determined was the propriety of commitment for contempt by the surrogate of Rensselaer county, of an executor for having failed to make certain directed distributive payments. The court held (p. 541) that Surrogates' Courts possessed only such powers as had been expressly granted and since they were not courts or record, the remedies for enforcement afforded by the Revised Statutes were unavailable to surrogates, and that the only powers which were possessed were those employed " in the Court of Chancery in analogous cases." The court concluded (at p. 545): " The power of the Surrogate to enforce his decree being dependent upon the practice of the Court of Chancery, and that practice not authorizing a commitment, as for a contempt, to close custody, in cases analogous to the present one, we must hold the form of commitment to have been unauthorized; that for non-payment of a sum adjudged by a final decree, upon which the defendant is liable to imprisonment, the proper process is an execution against the body in the form prescribed by the Court of Chancery."

The result of this drastic appellate limitation upon the authority of surrogates to perform their proper functions was that which has become increasingly familiar during the succeeding years (Cf. *Matter of Morris*, 134 Misc. 374, 380; *Matter of Rosenberg*, 157 id. 490, 493), namely, a sweeping legislative reversal, not only by making Surrogates' Courts courts of record, but by according them powers to enforce their pronouncements of punishment for contempt which far transcended those possessed by courts of general jurisdiction.

This sweeping legislation was incorporated in section 2555 of the Code of Civil Procedure, which was enacted on May 6, 1880, was carried, unchanged, into section 2554 of the Revised Code by chapter 443 of the Laws of 1914, and thence, still unaltered, into section 84 of the Surrogate's Court Act. The text of this section is today identical with that enacted over fifty-nine years ago in response to the imputation of the impotency of surrogates in this regard by the Court of Appeals in the *Watson* case, except for the addition of the next to the last paragraph of the present section, which was enacted in 1936 (Laws of 1936, chap. 338) at the suggestion of the executive committee of the Surrogates' Association, and which possesses no present relevancy.

As enacted in 1880, the statute reads:

" In either of the following cases, a decree of the Surrogate's Court *directing the payment of money*, or requiring the performance of any other act, may be enforced by serving a certified copy thereof upon the party against whom it is rendered, or the officer or person who is required thereby, or by law, to obey it; and if he refuses or willfully neglects to obey it, by punishing him for a contempt of court:

" 1. Where it cannot be enforced by execution, as prescribed in the last section.

" 2. Where part of it cannot be so enforced by execution; in which case, the part or parts which cannot be so enforced may be enforced as prescribed in this section.

" 3. Where an execution issued as prescribed in the last section to the sheriff of the surrogate's county has been returned by him wholly or partly unsatisfied.

" 4. Where the delinquent is an executor, administrator, guardian, or testamentary trustee, and the decree relates to the fund or estate, in which case the surrogate may enforce the decree as prescribed in this section, either without issuing an execution, or after the return of an execution, as he thinks proper." (Italics supplied.)

Four points of interest emerge on a comparison of this enactment with that defining the like authority of courts of general jurisdiction.

namely, *first*, by the italicized words in the unnumbered paragraph of the section, authority is accorded to Surrogates' Courts to enforce their pronouncements by contempt even when they direct merely that money shall be paid over by a party, no matter what the identity of the payee, whereas courts of general jurisdiction possess this power only when the intended recipient is the court itself, or one of its officers; *second*, the first two numbered subparagraphs give to the surrogate the same authority which courts of general jurisdiction possess, and all which they possess; *third*, in addition to the authority possessed by courts of general jurisdiction, the surrogate may, pursuant to the subparagraph numbered " 3," enforce a decree or order " *directing the payment of money* " by punishment for contempt for or against any party, if an execution thereon has been returned wholly or partly unsatisfied; and, *fourth*, he may enforce such a decree in like manner against a fiduciary appointed by him without the issuance of an execution. This, obviously, is also an authority which a court of general jurisdiction does not possess. (*Coffin* v. *Coffin*, 161 App. Div. 215, 218; *Gray* v. *Cook*, 24 How. Pr. 432, 434. See, also, *Harris* v. *Elliott*, 163 N. Y. 269, 274, 275.)

In the present proceeding, interest is confined to the third of these noted powers, namely, for the enforcement of a decree directing the payment of money by a non-fiduciary party. It is in this connection that the four judicial pronouncements to which reference was made at the beginning of this discussion become relevant.

The first for note is *Matter of Dissosway* (91 N. Y. 235). As disclosed by the report, a contest arose in this case in the Surrogate's Court of New York county respecting the issuance of letters, and a decree was entered directing Dissosway and certain other objecting creditors to pay certain costs. He failed to do so and was committed for contempt. He obtained a writ of habeas corpus and was discharged and the issue before the Court of Appeals was an appeal from the order of discharge. The court, after noting the provisions of the Code permitting punishment by the surrogate when a decree directing the payment of money cannot be enforced by execution, where a part cannot be so enforced, and when an execution has been returned unsatisfied, said (at p. 238): " Therefore, where an execution can be issued against the property of one who is ordered by a decree of the surrogate to pay money to a party, such an execution must be issued and returned unsatisfied, in whole or in part, before proceedings for a contempt under section 2555 can be instituted, and until such an execution has been issued and returned unsatisfied, the surrogate has no jurisdiction to punish for contempt."

The inevitable implication of this statement is that any decree of a surrogate, even for the payment of costs, directed against a non-fiduciary party to a proceeding in his court, is enforcible by punishment for contempt if an execution thereon has been returned unsatisfied, which is precisely what subdivision 3 of section 84 of the Surrogate's Court Act authorizes.

The decision in *Matter of Gilman* (6 Dem. 358) is similar to the *Dissosway* result. There a decree had directed a distributee to pay a specified sum to the trustee. She failed so to do, and application was made to punish her for contempt. The court said (at p. 360): " As it does not appear that any execution has been issued in the present case, the sections above cited do not warrant the action now invoked."

In *Matter of Prout* (19 N. Y. St. Repr. 318, 321), which was an inheritance tax case, Surrogate RANSOM included a dictum based on *Matter of Gilman,* saying: " In regard to persons interested in the property liable to the tax other than administrators, executors and trustees, I am of opinion the surrogate can, on the return of an execution issued upon his decree, as already seen, enforce the decree as provided in section 2555 of the Code."

A like statement is found in *Matter of Curtis* (73 Hun, 185, 191; affd., 142 N. Y. 219): " With respect to the others who are still living, although by reason of their death before the life tenants they may never come eventually into possession of any interest in the estate, the tax, if now assessed and held to be payable, can be enforced against them, which, if they are unable to pay it, might result in their imprisonment, under the power given to the surrogate to enforce a decree by proceedings for contempt."

Obviously, so far as judicial decisions go, little is added to the language of the statute itself. This, however, is wholly unequivocal and accords authority to surrogates in unmistakable terms to enforce any order or decree for the payment of money against any party, fiduciary or non-fiduciary, to a proceeding in their courts, provided, as to the latter, an execution has been returned unsatisfied.

When this power is analyzed in the light of the authority for adjudication which is possessed by surrogates and in view of the powers of a court of general jurisdiction for body execution against a defendant under section 826 of the Civil Practice Act, the difference in practical result becomes negligible. It is provided in the latter connection that " A defendant may be arrested in an action, as provided in this and the next article, where the action is brought for either of the following causes: * * *

" 3. To recover damages for an injury to property, including the wrongful taking, detention or conversion of personal property. * * *

" 7. To recover a chattel where it is alleged in the complaint that the chattel or a part thereof has been concealed, removed or disposed of so that it cannot be found or taken by the sheriff and with intent that it should not be so found or taken, or to deprive the plaintiff of the benefit thereof. Where such allegation is made, the plaintiff cannot recover unless he proves the same on the trial of the action, and a judgment for the defendant is not a bar to a new action to recover the chattel."

The situations in which a decree of a surrogate will award a recovery against a non-fiduciary party to a proceeding are almost wholly confined to cases in which the respondent has converted property which belonged to the decedent at the time of his death and which was a part of the assets of the estate. It possesses no power whatsoever to interpret or enforce contracts either express or implied against any such person (*Ward* v. *New York Life Ins. Co.*, 225 N. Y. 314, 319, 320; *Matter of Miller*, 257 id. 349, 356, 357; *Matter of Thomas*, 235 App. Div. 450, 454; *Matter of Lessig*, 165 Misc. 706, 709), and has never sought or attempted to exercise such authority. Its jurisdiction is notoriously purely *in rem* (*Matter of Bradford*, 159 Misc. 482, 485; *Matter of Lusher*, Id, 387, 389; *Matter of Geller*, 167 id. 578, 579), and no sound distinction can be drawn between an incarceration of a respondent in a discovery proceeding in the Surrogate's Court, under section 84 of the Surrogate's Court Act, who has converted property of a decedent a week after his death, and imprisonment of the same person for the same act performed a week before his demise, by order of a court of general jurisdiction under section 826 of the Civil Practice Act.

In the case at bar it was demonstrated that the respondent converted specific currency belonging to the decedent, and the fiduciary argues from this that the decree should be construed as requiring the performance of an act, namely, the return of the particular currency in question, and that the respondent may be punished for contempt for non-performance of this directed act. In this connection he places his legal reliance upon *Polo* v. *Stern* (161 Misc. 264; affd., 249 App. Div. 638) and *Mendelsohn* v. *Rosenberg* (248 id. 743). He might have cited in addition *Nelson* v. *Hirsch* (264 N. Y. 316, 318) and *Forstman* v. *Schulting* (108 id. 110, 112). The two cases cited by the petitioner are predicated on a dictum in the *Nelson* case.

If the court deemed the principle enunciated applicable to the present situation it would have difficulty in distinguishing the determination in *Harris* v. *Elliott* (163 N. Y. 269, 274), which appears squarely in point against the availability of proceedings

for contempt for the enforcement of such an obligation. It is also impressed by the viewpoint of the court in *Randall* v. *Dusenbury* (9 J. & S. 456, 458), which, in overruling a similar contention, observed: "It is argued that the defendant being further directed to pay the money out of a particular fund in priority to other payments * * * it was intended to grant to the appellant the remedy he is now seeking to enforce. The judgment requires only the payment of money, and it appearing that an execution can issue to collect it, the plaintiff is restricted to the issue of an execution as the only remedy he can resort to."

The real answer to the petitioner's authorities, however, appears to be that they were constructions of the enactment which is applicable not to Surrogates' Courts but to courts of general jurisdiction, and that it is the apparent policy of the law, as demonstrated by the provisions of section 84 of the Surrogate's Court Act, to deny a remedy by contempt, against one not occupying a fiduciary position until it has been shown that the usual remedy by execution is ineffective.

There is here no demonstration that execution would not produce the desired result; indeed, the indication of some of the testimony of the respondent was to the effect that the money was still available. Under such circumstances, if the dictum of the *Nelson* case (*supra*) and the decisions in *Polo* v. *Stern* (*supra*) and *Mendelsohn* v. *Rosenberg* (*supra*), and not the determinations in *Harris* v. *Elliott* (*supra*) and *Randall* v. *Dusenbury* (*supra*) represent the law and are applicable to proceedings in the Surrogate's Court, the court would deem this a proper situation in which to deny an adjudication for contempt until after the return of an execution either wholly or partly unsatisfied, as a matter of the discretion which *Mendelsohn* v. *Rosenberg* (248 App. Div. 743) holds is vested in the court in respect of the grant of this remedy.

The motion for reargument is, accordingly, granted and on such reargument the court determines that before a proceeding for contempt may be instituted against a non-fiduciary party, compliance with subdivision 3 of section 84 of the Surrogate's Court Act must be demonstrated in addition to the showing which is required when a recovery has been made against a fiduciary. The motion for an alteration of the result previously attained is accordingly denied.

Enter order on notice in conformity herewith.