PINCUS FINGERHUT, Plaintiff, *v.* LOUIS HIRSCH et al., Defendants.

Supreme Court, Special Term, New York County, September 20, 1943.

*Morris Schmulback* for plaintiff.

*Wilfred S. Stachenfeld* for David L. Davidoff, defendant.

WALTER, J. By a judgment entered in January, 1940, in an action by a subcontractor to foreclose his mechanic's lien, it was adjudged that the contractor had received moneys from the owner and failed to devote the same to the payment of the subcontractors and materialmen and had used them for other purposes, and the contractor was directed to pay to certain named subcontractors and materialmen specifically stated sums found by the judgment to be due to them. The judgment describes the contractor as a trustee of such moneys under the Lien Law, both in the adjudication and in the direction to pay. By an order subsequently made in February, 1941, a receiver of " the funds " received by the contractor from the owner was appointed, and the contractor was thereby directed to pay to the receiver certain of the sums which the judgment had directed to be paid to the subcontractors and materialmen. Each such sum, however, was specifically stated in the order to be " for " a specifically named subcontractor and materialman, and the receiver was directed to pay each such sum to such subcontractor and materialman. The order contains the further provision that any " balance " shall be paid by the receiver to the City Treasurer subject to the further action of the court, but as the order had already directed the receiver to pay out all that was directed to be paid to him it is difficult to understand how there ever could be any " balance ".

Neither the judgment nor the order has been complied with, and this motion to punish the contractor for contempt is now made by the receiver and by the plaintiff in the action in which the judgment was entered.

Investigation reveals the rather astonishing fact that the power of the surrogates' courts to enforce their decrees directing the payment of money by punishing for contempt is far more comprehensive than the power of this court so to enforce its judgments of a like nature. (Civ. Prac. Act, §§ 504, 505; Surrogate's Ct. Act, §§ 83, 84; *Matter of Kramsky,* 172 Misc. 935, per WINGATE, S.) Provision is made for the enforcement of both by execution. (Civ. Prac. Act, § 504; Surrogate's Ct. Act, § 83.) There then follow sections similar in structure and general phraseology which say that there may be punishment for contempt where there cannot be enforcement by execution (Civ. Prac. Act, § 505; Surrogate's Ct. Act, § 84), which has been uniformly regarded as referring to the character of the judgment entered and never as meaning that contempt proceedings will lie simply because an execution does not produce payment. The section dealing with surrogates' decrees then goes on to give unlimited power to enforce any decree by punishing for contempt, sometimes before the issuance of an execution and sometimes after the return of an execution unsatisfied (Surrogate's Ct. Act, § 84; *Matter of Kramsky, supra,* p. 942), while the section dealing with all other courts of record contains but one exception to what is in effect its broad prohibition against punishment for contempt in failing to obey any final judgment directing the payment of a sum of money, and that exception is that there may be punishment for contempt " where the judgment requires the payment of money into court, or to an officer of the court; except where the money is due upon a contract, express or implied, or as damages for non-performance of a contract ". (Civ. Prac. Act, § 505.)

The fact that surrogates' decrees directing the payment of money generally are directions that fiduciaries perform their fiduciary duties, while the judgments of other courts of record directing the payment of money generally are merely the enforcement of ordinary contract or tort liabilities, may afford an explanation of how the statute relating to surrogates' decrees happened to get into a form differing so radically from the statute relating to judgments of other courts of record; and the settled policy of the State that, in general, there shall be no " imprisonment for debt " (see Civil Rights Law, § 21; *Matter of Reeves* v. *Crownshield,* 274 N. Y. 74) doubtless dic-

tates that there should be some difference between the two things. Nevertheless, this court, as well as the surrogates' courts, enforces fiduciary obligations, and the surrogates' courts, as well as this court, enforce nonfiduciary obligations (*Matter of Kramsky, supra*) and will do so more in the future than they have in the past (Surrogate's Ct. Act, § 40, subd. 9). It seems difficult to justify such radically different methods of enforcing judgments and decrees which are in all substantial respects the same, merely because one was made in this court and the other was made in the surrogate's court.

But despite that difficulty, the fact remains that in respect of judgments of this court (apart, of course, from judgments in matrimonial actions, as to which special provision is made in section 1172 of the Civil Practice Act), it has been repeatedly stated in broad terms that a judgment upon which an execution may be issued cannot be enforced by punishment for contempt, and it has been so held even where the sum directed to be paid had been received by the directed party as a trustee (*Harris v. Elliott,* 163 N. Y. 269) or as a guardian (*Coffin v. Coffin,* 161 App. Div. 215) or as an " agent and trustee " (*Walters v. Reinhoudt,* 130 Misc. 745, 746) or where the judgment adjudicated him to be a trustee (*Hennig v. Abrahams,* 246 App. Div. 621, 622, affd. 270 N. Y. 626) ; and as all final judgments directing the payment of a sum of money are enforcible by execution (Civ. Prac. Act, § 504), it seems to follow that no such judgment of any court of record other than the surrogates' courts (except judgments in matrimonial actions) may be enforced by punishment for contempt, no matter how flagrant a violation of sacred fiduciary duty may have induced that judgment, except in the single instance in which the judgment " requires the payment of money into court, or to an officer of the court " (Civ. Prac. Act, § 505, subd. 4).

The only case cited or found which might be thought to warrant any qualification of that statement is *Mendelsohn v. Rosenberg* (248 App. Div. 743), in which the court sustained punishment for contempt in failing to pay money which the judgment found had been received as proceeds of two life insurance policies " in trust for the use and benefit of plaintiff and all the defendants except appellant ", even though the court expressed doubt whether the receiver to whom payment was directed could be regarded as an officer of the court within the meaning of subdivision 4 of section 505 of the Civil Practice Act. In that case, however, the court referred to the money, not only as " ear-marked as a specific or particular fund ", but,

also, as "*in hand*" (italics supplied). It thus would seem that that case rests upon the distinction between directing a trustee to pay over trust funds which he actually has and directing him to pay the amount of trust funds which he did have and should have but which he actually has diverted and dissipated, and that is precisely the distinction which was noted in *Harris* v. *Elliott* (163 N.·Y. 269, 275, *supra*) in connection with the holding in that case that a trustee who had dissipated the fund could not be punished for contempt.

I thus am unable to regard *Mendelsohn* v. *Rosenberg* as in any way qualifying the other cases above cited, and the right to the relief sought upon the present motion thus must depend upon whether or not the case is brought within the exception stated in subdivision 4 of section 505 of the Civil Practice Act with reference to money required to be paid into court or to an officer of the court.

The general rule that every receiver appointed by a court is regarded as an officer of the court which appoints him has not been applied in cases arising under subdivision 4 of section 505 of the Civil Practice Act; and under what circumstances a receiver is to be regarded as " an officer of the court " within the meaning of that particular provision is not very clear. A receiver in supplementary proceedings has been held not to be such (*Manning* v. *Drapkin,* 242 App. Div. 782). The case of *Gildersleeve* v. *Lester* (68 Hun 532; 68 Hun 535, affd. on opinion below 139 N. Y. 608) was an action by one director of a corporation against another (both referred to in the report as trustees) to compel the latter to account for his official acts and pay the value of such of its assets as he had lost, wasted or acquired for himself or transferred to others, and the judgment rendered in that action directed the defaulting director to pay a stated sum to a receiver appointed by the judgment. After stressing the fact that the action was not brought for the plaintiff's benefit but for the benefit of the corporation and its creditors and stockholders (68 Hun 532, 534), the court concluded that the receiver appointed by such judgment was an officer of the court and sustained an order punishing the defaulting director for contempt (68 Hun 535, 537). In *General Electric Co*. v. *Sire* (88 App. Div. 498) a receiver appointed in an action to sequestrate the property of a corporation was joined as a defendant in an action by creditors to set aside certain transfers, and that judgment in that action declared the transfers fraudulent and, among other things, directed the transferees to pay various

sums of money to that receiver. It was there held that the receiver had been made a party as the holder of the legal title to the corporation's property and not as an officer of the court, and an order punishing the transferees for contempt was reversed. In *Nelson* v. *Hirsch* (240 App. Div. 983, appeal dismissed with opinion 264 N. Y. 316–318), the action was of identically the same nature as *Gildersleeve* v. *Lester* (68 Hun 532 and 535, *supra*), and the final judgment likewise directed payment of money to a receiver appointed in the action (see 264 N. Y. 316, 317, *supra*). Yet, the Appellate Division, Second Department, stated that such judgment could not be enforced by proceedings in contempt (240 App. Div. 983, *supra*), and in dismissing an appeal from its order as being one resting in discretion the Court of Appeals seems to have been at pains to reserve the question " whether an order punishing for contempt may ever properly be made in such an action " (264 N. Y. 318, *supra*). In *Polo* v. *Stern* (161 Misc. 264, mod. and affd. 249 App. Div. 638) the judgment in a judgment creditor's action to set aside transfers as fraudulent directed payment of money to a receiver appointed by such judgment, and such receiver was held to be an officer of the court and a contempt order was sustained. In *Potter* v. *Emerson-Steuben Corp.* (162 Misc. 392, affd. 251 App. Div. 841) a receiver appointed in a sequestration action brought an action like *Gildersleeve* v. *Lester,* and the judgment in that action directed the payment of money to such receiver, and it was held that such receiver was an officer of the court and that contempt proceedings would lie, the court there also remarking that the defendants became trustees *ex maleficio* of the moneys they had received (apparently meaning the moneys they were directed to pay to the receiver).

It would not be easy to formulate the principle or rule which underlies and controls the cases cited, but I regard it as at least clear that none sustains the view that the receiver in this case can be regarded as an officer of the court within the meaning of the particular statute here involved. *Gildersleeve* v. *Lester* (68 Hun 532, 68 Hun 535, affd. on opinion below 139 N. Y. 608, *supra*), on which the moving parties expressly rely, is palpably different. The receiver here was not appointed by the judgment. The action in which the judgment was rendered was brought to enforce separate claims of separate individuals. The judgment directs payment of separate sums to those separate individuals. Under the judgment, no person was to receive anything for or on behalf of or for the benefit of any other

person. There apparently was no thought on the part of any party or of the court that any receiver was necessary or useful. It was not until a year later that anyone apparently thought of a receiver. Assuming, as I do, both the validity and the propriety of the subsequent order appointing the receiver, it is quite plain that it added nothing to what the judgment already had accomplished. It made no direction for the payment of any additional sum and it changed no beneficial interest in any recovery. It imposed upon the receiver no duty other than to receive and then pay in exact accordance with what the judgment already had provided. Unless, therefore, it can be said that an officer of the court can be called into being for the sole purpose of being made the recipient of a direction to pay, which can be enforced by punishment for contempt in a case where such enforcement could not otherwise be had, then this receiver cannot be called such officer within the meaning of the statute here involved; and it seems quite plain that such a device cannot be sanctioned. (*Marlee, Inc.,* v. *Bittar,* 257 N. Y. 240, 243; *Wagenheim* v. *Ocean Parkway Properties, Inc.,* 235 App. Div. 642.)

The defendants here moved against make the further contention that in view of the construction placed upon the Lien Law in *Raymond Concrete Pile Co.* v. *Federation Bank* (288 N. Y. 452, 460, 463), decided after the judgment here involved was entered, there is no basis for any holding that, so far as civil remedies are concerned, they received the money from the owner in any trust or fiduciary capacity; that such money as is due the subcontractors and materialmen is due solely upon a contract or as damages for nonperformance of a contract; and that for that additional reason there could be no punishment for contempt under subdivision 4 of section 505 of the Civil Practice Act, even if the judgment were one which requires payment to an officer of the court. (*Walford* v. *Harris, No. 2,* 78 Hun 346.) If it were necessary to a decision, careful attention would have to be given to such contention, involving, as it does, the question whether under the circumstances disclosed I should accept the judgment as conclusive or follow a later decision of the Court of Appeals (compare *Matter of Kahn* [*National City Bank*], 284 N. Y. 515, 522, 523, and cases there cited), but in view of the conclusion reached on other grounds that question need not be decided.

The motion to punish for contempt is denied.