"OLGA NILSSON", Petitioner, *v.* "OLAF NILSSON", Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, November 7, 1951.

*James Rosenthal* for petitioner.

*John F. Butler* for respondent.

---

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482).

SICHER, J.   There are presented questions arising out of a husband-father's breach of a separation agreement.

Upon the trial it was expressly conceded that the parties were duly married on November 2, 1942, and are still husband and wife; that petitioner and the child "Dorothy" (born January 12, 1935, and formally adopted in March, 1947) are each entitled to support on a means and separate maintenance basis under subdivision (1) of section 92 of the Domestic Relations Court Act of the City of New York; and that the sole remaining issue is the amount of " fair and reasonable " support " as justice requires having due regard to the circumstances of the respective parties " which respondent may be ordered to pay at this time under subdivisions (1)–(4) of section 92, and subdivision 1 of section 101 of the Domestic Relations Court Act of the City of New York.

That sharply controverted issue involves a complex situation to which is relevant the substance of the following comment in an earlier opinion (" Lebolt " v. " Lebolt ", 200 Misc. 704).

" Finally, petitioner's counsel's citation of Judge CURTIS BOK's eloquent caveat — ' It is not enough to send men and women away from court with a decision; there must also be a sense that there is wisdom in it, and a blessing upon it, and a touch of kindly magic to go with it.' (' I Too, Nicodemus ', p. 325) — invites the dictum that it is at least arguable that petitioner's welfare may be better served by her clinging to the fixed contract obligation of respondent rather than substituting for it the hazards of a Family Court support proceeding.  Even though there be a decrease or stoppage of the earnings petitioner had when the separation agreement was consummated in her behalf on April 15, 1950, a support proceeding in this court would have to take into account also the asserted, if proved, change in respondent's circumstances   *   *   *.  Unfortunately, this court is daily constrained to enter inadequate orders because there must be taken into account not only the needs of the dependent but also the inability of the person chargeable with support to contribute an adequate amount (see Domb v. Domb, 176 Misc. 409 [PANKEN, J.])." (" Lebolt " v. " Lebolt ", supra, p. 707.)

" Lebolt " v. "Lebolt " is of course distinguishable from the case at bar in that it dealt with a situation where the separation agreement was being duly performed but the petitioning wife alleged that its amount was inadequate to keep her from becoming a public charge.  Neither of those two factors is present here. The October 27, 1949, separation agreement between the parties

has been more " honored in the breach than the observance " but neither the petitioner nor the child is now likely to become a public charge. However because of the respondent's breach of that separation agreement the jurisdiction of this court is not precluded by its execution. " It is well settled that a husband cannot invoke a separation agreement as a bar to a separation action in the Supreme Court of the State of New York if he has broken that agreement and his wife accepted such repudiation by instituting a matrimonial action. (See *Randolph* v. *Field,* 165 App. Div. 279; *Landes* v. *Landes,* 172 App. Div. 758; *Newport* v. *Newport,* 131 Misc. 851.) In my opinion, the same principle is applicable to a support proceeding in this court, whether or not petitioner be likely to become a public charge. (See *Matter of Wallach* v. *Wallach,* 241 App. Div. 803; *Matter of Fried* v. *Fried,* 244 App. Div. 788, leave to appeal denied 245 App. Div. 717; cf. *Yackeren* v. *Yackeren,* 249 App. Div. 507.) That is to say, it seems to me, the words ' a separation agreement shall in no way preclude the filing of a petition * * * for the support of a wife who is likely to become a public charge ' (N. Y. City Dom. Rel. Ct. Act, § 137, subd. 5, as added by L. 1942, ch. 762) should be construed as relating only to a separation agreement which is being duly complied with but which provides a sum inadequate to indemnify the community *fully* against the burden of maintaining the wife. It is therefore my view that if a husband shall have breached a separation agreement, such violation opens this court to a petition for support according to respondent's means ". (" *Jenkins* " v. " *Jenkins* ", 179 Misc. 905, 907.)

At the same time, " Such jurisdiction does not include the power to enforce a separation agreement *as such* nor does the existence of such an agreement necessarily entitle petitioner to the summary procedure and drastic remedies provided by Domestic Relations Court Act of the City of New York (L. 1933, ch. 482). (See *Johnston* v. *Johnston,* 177 Misc. 618, at 621, 622; cf. *Goldman* v. *Goldman,* 282 N. Y. 296.) At most, the existence of such an agreement is evidential and one of the ' circumstances of the respective parties ' under subdivision 1 of section 92 of Domestic Relations Court Act of the City of New York. (See *Johnston* v. *Johnston, supra,* 623.) " (" *Jenkins* " v. "*Jenkins* ", *supra.*)

Moreover, subdivision 5 of section 137 of the Domestic Relations Court Act of the City of New York expressly provides that " A separation agreement shall in no way preclude the filing of a petition for the support of a child or the making of an order for its support by the family court ".

It is earnestly argued in petitioner's behalf that the figure stipulated in the October 27, 1949, separation agreement should be adopted as the amount of the present order of this court, i.e., that such stipulated figure should be deemed conclusive against respondent despite interim changes of financial circumstances. But the unrealisticness of that demand is indicated by petitioner's election to risk the hazards of a Family Court support proceeding instead of standing upon and attempting to enforce her contractual rights under the separation agreement in another court of competent jurisdiction within the doctrine of *Schmelzel* v. *Schmelzel* (287 N. Y. 21) and *Goldman* v. *Goldman* (282 N. Y. 296, 300).

On the other hand, respondent's position is likewise specious. In effect his counsel contends that a man of respondent's present monthly salary of $500 — incidentally, fixed by the president of a corporation with whom he is on such friendly terms that they occupy the same apartment — must favor creditors over his family to an extent which would leave him net monthly earnings of only $212, subject to claimed basic personal living expenses of $60 for rent, $52 for food, and a balance of $100 for " transportation, laundry, clothing care, necessary wardrobe replacements, insurance premiums, medical and dental care, recreation and any other personal indebtedness ". If that contention were accepted at face value, not only would respondent be incapable of performing an order in the proffered sum of only $15 a week but there would eventuate the spectacle of the wife and child of a man of respondent's even higher potential earning capacity, all three of them accustomed to very comfortable living standards, being relegated to public relief except for the mother's energy and self-respect in filling the dual role of office worker and also maintaining a home for herself and the child (see " *Walton* " v. " *Walton* ", 180 Misc. 746, 747–748). Yet, it is well established that a father's obligation for support is measured by the child's needs in relation to their station in life and not the low subsistence level of public relief budgets. See *Schacht* v. *Schacht* (187 Misc. 461, and cases cited) ; also, " There is no doubt that in this state, as between husband and wife, the primary obligation to provide for the support of his wife and their children rests upon the husband, and that wife is not bound to maintain her husband and children, even though she may have a separate estate." (*Young* v. *Valentine,* 177 N. Y. 347, 352.)

True, a respondent's debts constitute one of the " circumstances of the respective parties " (N. Y. City Dom. Rel. Ct.

Act, § 92, subd. [1]) ; and some weight must be here accorded to their existence and origin and the practical need for their clearance to sustain or enhance respondent's business standing. His debts, particularly the judgment entered against him by X Hospital for care of petitioner, differ from the too familiar type of improvident installment buying or finance company obligations which are often a significant symptom or even a contributing cause of marital separation. But, manifestly, today's order cannot be predicated on the claimed priority allowance of $200 a month for respondent's creditors out of a gross salary of $500. '' Such disposition would be contrary to the well-defined public policy, expressed in kindred legislation, that the rights of the creditor are limited by the reasonable needs of a wage-earner debtor and his dependents. Civil Practice Act, § 684, provides for a judgment creditor levy upon the earnings, or other income, of a judgment debtor not exceeding 10% thereof, and, also, for satisfaction of only one such 10% levy at one time. And, although that restrictive provision has been supplemented by Civil Practice Act, § 793, enacted to cover situations where a levy under Civil Practice Act, § 684 is unavailable (e.g., a Federal government employee judgment debtor, Reeves v. Crownshield, 274 N. Y. 74, 8 N. E. 2d 283, 111 A. L. R. 389) or a 10% garnishment would be unfairly small in proportion to the judgment debtor's surplus income (see Wells v. Hollister, Sup. 43 N. Y. S. 2d 298), nevertheless, the amount of any order under Civil Practice Act, § 793, is discretionary (see Dotlea Realty Corporation v. Abrams, 175 Misc. 591, 592, 24 N. Y. S. 2d 252) and is to be fixed only ' after due regard for the reasonable requirements of the judgment debtor and his family, if dependent upon him '. Civil Practice Act, § 793. ' It would certainly be contrary to the policy of the State to deprive a man for the benefit of a creditor of income at least sufficient to meet the reasonable requirements for the support and maintenance of himself and of his dependents.' McDonnell v. McDonnell, 281 N. Y. 480, 24 N. E. 2d 134, 135.'' (Amato v. Amato, 45 N. Y. S. 2d 371, 374.) As respondent's present income consists largely, if not wholly, of a $6,000 annual gross salary from a New York corporation, the maximum that could be reached on execution under section 684 of the Civil Practice Act, is $50 a month; and in the light of the close personal relations between respondent and the president of that employer corporation such a garnishment is unlikely to cause his discharge.

Furthermore, respondent's salary is supplemented by a flexible expense account, including the employer's paying the remaining installments of the purchase price of an automobile and the cost of its operation; and respondent's demonstrated potential earning capacity is at least $7,500 per annum.

On the other hand, some weight must be accorded to the assets petitioner acquired under the separation agreement, her current earnings of $48 a week, and the impracticability of placing respondent under a present order, within his capacity to perform, sufficient for continuance of the scale of living petitioner would like to maintain despite the separation. It is just not feasible to enter now an enforcible order equivalent to the $60 weekly sum stipulated in Clause 7(a) of the October 27, 1949, separation agreement, "which said payments shall be full, fair and reasonable provision for the wife and maintenance, support and education of the child. Of this latter sum Twenty ($20.00) Dollars per week shall be deemed for the support of the child until she reaches the age of eighteen (18) or marries, at which time such payment for her shall cease."

For the foregoing reasons, upon the entire record, the court hereby finds that the allegations of the petition have been sustained; respondent is hereby held chargeable with the support of the petitioner-wife and the child "Dorothy" according to his means; and he is therefore hereby ordered and directed to pay into this court, until further order, for their support the following sums:

(1) Thirty dollars a week, each and every week, beginning November 14, 1951, and each and every Wednesday thereafter until further order of the court;

(2) *In addition,* the sum of at least $5 a week, each and every week, beginning November 14, 1951, and every Wednesday thereafter until there will have been paid in such additional installments a total of $295 (less the amount of any direct payments made to petitioner up to November 14, 1951, between August 22, 1951, and November 14, 1951, other than $15 on September 7 and $50 on September 14, 1951).

Such $295 figure represents the weekly order sum of $30 *nunc pro tunc* for the period from August 22, 1951 (the date of the filing of the petition) to but excluding the November 14, 1951, first installment deposit due date under subdivision (1) hereof, less the afore-mentioned direct payments of $65. (See Family Court Rule XIV, subd. [b], which provides: "In a proceeding in which no temporary order shall have been entered, the Court,

in its discretion, may direct that the final order operate *nunc pro tunc* as at the date of the filing of the petition ".");

(3) Within five days after respondent will have received any dividend upon his proof of claim for unpaid salary earned from the now bankrupt Y Corporation, respondent should notify this court the amount of that dividend and out of it discharge any then unpaid balance of the above-described $295 item, or if that dividend be less than sufficient to discharge such balance in full, then to allocate the whole amount thereof against such balance;

(4) Request for modification may be scheduled when any such dividend shall have been received by respondent or upon any other material change of circumstances of either party in accordance with the rules and practice of this court.

Notice shall be given pursuant to the subjoined direction.