Yetta FREEMAN, Plaintiff, Appellee,

v.

Bob HEIMAN, Defendant, Appellant.
No. 681–69.

United States Court of Appeals,
Tenth Circuit.

May 28, 1970.

Roy J. Davis, Oklahoma City, Okla. (Norman E. Reynolds, Oklahoma City, Okla., on the briefs), for plaintiff, appellee.

Raymond Burger, Oklahoma City, Okla., for defendant, appellant.

Before PICKETT, HILL and HICKEY, Circuit Judges.

PICKETT, Circuit Judge.

In this action appellee Freeman obtained a judgment against appellant Heiman for more than $16,000. Heiman failed to satisfy the judgment and upon application of Freeman the court ordered him to appear and answer as to his assets. Okla.Stat.Ann. tit. 12, § 842 (Supp. 1965). Following a hearing, an order was entered requiring Heiman to satisfy the judgment with installment payments of $500.00 per month.[1] In addition, the court enjoined Heiman and his wife from transferring four registered horses and various corporate common stocks which had been transferred to Mrs. Heiman by her husband. This appeal challenges the constitutionality of the Oklahoma statute which authorizes the court to order satisfaction of a judgment in installments and to punish for contempt the failure to pay as ordered. It is also contended that the $500 per month installment requirement was arbitrary and without reference to the financial ability of Heiman to pay that amount after expenditures from his income for his own use and support of his family. It is further urged that the court was without jurisdiction to enjoin Heiman's wife from disposing of her property and to impress a lien thereon.

The only evidence in the record is Heiman's testimony given at the examination. It was established that Heiman, through Al Heiman Company, a corporation, had been engaged in the insurance agency business for a number of years. Until a short time prior to the institution of this action he owned more than 90% of the outstanding stock of the company, all of which he transferred to his wife without consideration. Heiman and his wife jointly owned a home valued at $50,000 upon which there was a mortgage of $26,000. Household furniture and fixtures were valued at $20,000. There were other stocks, some of which were pledged to Heiman's mother to secure notes. Mrs. Heiman owned four valuable registered saddle horses. Over a period of time Heiman's annual income from his insurance business was approximately $40,000, and for the one-half year immediately preceding the hearing his income was about $20,000. A recent financial statement furnished by Heiman to a local bank showed his net worth to be approximately $339,000. Mrs. Heiman was a professional entertainer whose earnings varied from 20 to 40 percent of the couple's gross income.

1. The relevant part of Okla.Stat.Ann. tit. 12, § 850 (Supp.1965), is as follows:

The judge after the hearing provided herein may order any property of the judgment debtor, not exempt by law, in his possession or under his control to be applied toward the satisfaction of the judgment, and may enforce the same by proceedings for contempt in case of refusal or disobedience.

The judge may further order the judgment debtor to pay to the judgment creditor or apply on the judgment in installments, such portion of his non-exempt income, however or wherever earned or acquired, as the court may deem proper after due regard for any payments required to be made by the judgment debtor by virtue of law or prior order of a court or under wage assignments outstanding. * * * The court may, from time to time, modify an order made under this section upon application of either party upon notice to the other. A failure or neglect to comply with an order of direction of the court, shall be punished as for contempt.

Heiman testified as to his obligations and stated that he did not have any money to apply on the judgment.

The record evidence is ample to support the $500 monthly installments which the court required to be paid from Heiman's nonexempt regular income. Although his financial statement may have been inflated for credit purposes, it clearly indicates that Heiman had valuable interests. See McDonnell v. Birrell, 321 F.2d 946 (2d Cir. 1963); Hosmer v. Mutual Reserve Ins. Co., 145 Kan. 381, 65 P.2d 295 (1937).

The Oklahoma Constitution provides that "(i)mprisonment for debt is prohibited, except for the non-payment of fines and penalties imposed for the violation of law." Okla.Const. art. 2, § 13. It is argued that § 850, which authorizes the court to punish debtors for contempt if they fail to obey a court order to make installment payments on a judgment, is an indirect method of avoiding the Oklahoma constitutional provision against imprisonment for a debt. The Oklahoma courts have not construed the statute. Heiman relies upon the Missouri decisions of White v. Hutton, 240 S.W.2d 193 (Mo.App., 1951), and Ex Parte Fowler, 310 Mo. 339, 275 S.W. 529 (1925), which vacated findings of contempt for failure to pay amounts of money due representatives of estates. The basis for these reversals was that the judgments were not for the turnover of specific money or property, but rather for "mere payment of money" for which there could be no contempt charges. They did not involve the validity of an installment judgment statute and are clearly inapposite.[2]

■■■ A number of states have enacted statutes providing for the installment payment of judgments similar to § 850. So far as we have been able to ascertain, none of those statutes have been declared unconstitutional because of the possibility of punishment for contempt.

The purpose of such statutes is not to settle disputes as to ownership of property, but to aid judgment creditors in the discovery of a debtor's non exempt assets and their application to unsatisfied judgments. If the court finds from the evidence that a judgment debtor has income over and above the statutory exemptions, sufficient to partially pay the judgment, it may order the payment in installments. The authorized contempt proceeding to enforce the order is designed to punish for failure to make the required payments from existing funds and not for failure to satisfy the judgment debt. The cases involving the validity of these statutes are collected in the annotation at 111 A.L.R. 392. In Reeves v. Crownshield, 274 N.Y. 74, 8 N.E.2d 283, 285, 111 A.L.R. 389 (1937), the court, in discussing a New York statute almost identical to the Oklahoma statute in question here, said:

> The Legislature has seen fit to provide a creditor with a direct remedy for the collection of his just debts. A refusal to recognize such an order by the judgment debtor entitles the creditor to move to have him punished for contempt. Without this right, there would be no power in the court to enforce its order. To compel the judgment debtor to obey the order of the court is not imprisonment for debt, but only imprisonment for disobedience of an order with which he is able to comply. His refusal is contumacious conduct, the same as a refusal to obey any other lawful order of the court.

See 3 Freeman on Executions, § 451 (3d ed. 1910); F. E. Compton & Co. v. Williams, 248 App.Div. 545, 290 N.Y.S. 984 (1936); In Re Morris Plan Co. of New York, 164 Misc. 712, 299 N.Y.S. 475 (1937); Rosevine Realty Corporation v. Stich, 164 Misc. 339, 298 N.Y.S. 758 (1937). See generally Long Island

---

2. In Ray v. Paramore, 170 Okl. 495, 41 P.2d 73 (1935), the Oklahoma Supreme Court said that a person in possession of non exempt property belonging to a judg-

ment debtor was subject to contempt proceedings for failure to obey a court order to turn over the property for application to the judgment.

Trust Company v. Ross, 39 Misc.2d 41, 239 N.Y.S.2d 930 (1963); Levine v. Simon, Sup., 212 N.Y.S.2d 888 (1961); Scourtis v. Bililies, 335 Mass. 290, 139 N.E.2d 524 (1957); Fino v. Municipal Court of City of Boston, 326 Mass. 277, 93 N.E.2d 558 (1950); McDermott v. Justices of Municipal Court, 287 Mass. 563, 192 N.E. 18 (1934); Giarruso v. Payson, 272 Mass. 417, 172 N.E. 610 (1930); Light v. Canadian County Bank, 2 Okl. 543, 37 P. 1075 (1894); In Re Burrows, 33 Kan 675, 7 P. 148 (1885); State v. Burrows, 33 Kan. 10, 5 P. 449 (1885). In the absence of state court decisions, the district court's determination of the local law will not be disturbed on appeal unless clearly erroneous. In Re Cummings, 413 F.2d 1281 (10th Cir. 1969); Pan American Petroleum Corporation v. Candelaria, 403 F.2d 351 (10th Cir. 1968); Foundation Reserve Insurance Company v. Kelly, 388 F.2d 528 (10th Cir. 1968); Industrial Indemnity Co. v. Continental Casualty Co., 375 F.2d 183 (10th Cir. 1967); Savage v. McNeany, 372 F.2d 199 (10th Cir. 1967); Bezzi v. Hocker, 370 F.2d 533 (10th Cir. 1966); Pittsburgh-Des Moines Steel Co. v. American Sur. Co. of N.Y., 365 F.2d 412 (10th Cir. 1966). The trial Court's decision is not clearly erroneous.

The final contention is that the court erred in enjoining the transfer and imposing a lien upon the horses and corporate stock owned or held by Heiman's wife. Mrs. Heiman was not a party to the action nor the supplemental proceedings in aid of execution. The only testimony in the record is that the horses and the stock belonged to Mrs. Heiman. Under Oklahoma law the separate property of a wife cannot be subjected to the claims of the husband's creditors. Farmers' State Bank v. Keen, 66 Okl. 62, 167 P. 207 (1917). In Oklahoma a wife has the same freedom of contract with regard to her separate property as the husband. There is no presumption that the property acquired by the wife during the marriage was paid for by funds furnished by the husband and subject to his debts. Farmers' State Bank v. Keen, *supra*; Fink Bonding & Ins. Co. v. Stevens, 186 Okl. 439, 98 P.2d 898 (1939); see also Okla.Stat. Ann. tit. 32, § 9 (1945). Under these circumstances the court lacked the requisite jurisdiction to enter any order affecting Mrs. Heiman's property. 33 C.J.S. Executions § 378(c); Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 38 S.Ct. 65, 62 L.Ed. 260 (1917); Clarke v. Boysen, 39 F.2d 800 (10th Cir. 1930), cert. denied, 282 U.S. 869, 51 S.Ct. 75, 75 L.Ed. 768 (1930); Fireman's Fund Insurance Company v. Myers, 290 F.Supp. 405 (E.D.Pa.1968); Squeez-A-Purse Corporation v. Stiller, 31 F.R.D. 261 (S.D.N.Y.1962). We do not infer that the property in the name of Mrs. Heiman could not be subjected to the satisfaction of the judgment if in an appropriate proceeding it was found that Heiman was the real owner.

The order, as it affects the property of Mrs. Heiman is reversed; in all other respects, it is affirmed.