**Greg LEPAK, Petitioner,**

v.

**The Honorable R.B. McCLAIN, Judge of the Garvin County District Court, Respondent.**

**No. 78950.**

Supreme Court of Oklahoma.

Dec. 22, 1992.

Hal S. Whitten, Jr., John J. Ely, Jr., Oklahoma City, for petitioner.

John Spowls, Pauls Valley, for respondent.

ALMA WILSON, Justice:

The first impression issue presented in this original action is whether an application for citation for indirect civil contempt may be maintained to enforce compliance with an order, entered pursuant to 12 O.S. 1991, § 850, directing a debtor to make installment payments on a money judgment. We hold in the negative.

Jerry Hervey, the plaintiff and judgment creditor below (Hervey), initiated the action below against Greg Lepak, d/b/a Red Sands Fence Company, the petitioner/defendant and judgment debtor below (Lepak), for breach of contract. Hervey took a default judgment against Lepak in the amount of $10,293.09 for actual damages, $10,000.00 for punitive damages, $1,250.00 for attorney fees and $110.60 for costs. At a post-judgment hearing on assets, the parties agreed that the money judgment should be paid in installments. The trial court entered an order directing Lepak to pay specified amounts on specified dates toward satisfaction of the judgment debt. Apparently Lepak did not make the ordered installment payments and Hervey filed an application for citation for indirect civil contempt, alleging that Lepak willfully and contumaciously violated the installment payment orders and seeking punishment of Lepak by monetary fine and imprisonment. Lepak moved for dismissal of the application for contempt citation on the grounds that the proceeding violates art. 2, § 13 of the Oklahoma Constitution. The trial court denied Lepak's dismissal motion and docketed Hervey's application for citation for contempt for trial on the merits. Lepak filed his application in this Court asking that we assume original jurisdiction and issue a writ of prohibition against further indirect civil contempt proceedings before the trial court.

Lepak asserts that the pending contempt proceeding may result in his incarceration for failure to make payments on a judgment debt and thus the contempt proceeding is contrary to the prohibition against imprisonment for debt in art. 2, § 13 of the Oklahoma Constitution. Hervey responds that the underlying purpose of the contempt proceeding is the preservation of the integrity of the district court order directing installment payments on the judgment debt and therefore the contempt proceeding is not violative of art. 2, § 13.

The central question in this controversy is whether art. 2, § 13 of the Oklahoma Constitution prevents the legislature from authorizing the use of the judicial contempt powers to coerce installment payments on a judgment debt. This question is squarely within the original jurisdiction of this court.[1] A petition for writ of prohibition is an appropriate remedy to challenge the constitutionality of a statute vesting power in the district courts.[2] This court will assume original jurisdiction and consider a petition for writ of prohibition where the trial court's use of judicial force is challenged even though the cause is otherwise properly cognizable by the inferior tribunal.[3] And, where the exercise of judicial power violates fundamental law, this court will issue a writ of prohibition to control the performance of judicial proceedings.[4]

We assume original jurisdiction. We find that the Oklahoma Constitution, art. 2, § 13, prohibits the legislature from authorizing enforcement of a money judgment in an indirect civil contempt procedure as provided in the last sentence of 12 O.S.1991, § 850; and, that the constitutionally impermissible sentence is severable from the remainder of the statute. We hold that the last sentence of 12 O.S.1991, § 850 contravenes the express terms of the Oklahoma Constitution, art. 2, § 13; and, that the last

---

1. Okla. Const., art. 7, § 4.

2. The ancient common law writ of prohibition was fashioned to restrain an inferior judicial tribunal from further exercise of jurisdiction with which it is not legally vested. *Hirsh v. Twyford,* 40 Okl. 220, 139 P. 313, 315 (1913).

3. *Inhofe v. Wiseman,* 772 P.2d 389, 391 (Okla.1989).

4. *Atchison, T. & S.F. Ry. Co. v. Love,* 29 Okl. 738, 119 P. 207, 208 (1911) and *Draper v. State,* 621 P.2d 1142, 1147 (Okla.1980).

sentence of 12 O.S.1991, § 850 is hereby severed and stricken from the statute.

Section 13 of Article 2 of the Oklahoma Constitution states:

Imprisonment for debt is prohibited, except for the non-payment of fines and penalties imposed for the violation of law.

■ The words of art. 2, § 13 must be given their plain, natural and ordinary meaning.[5] That no one may be imprisoned for nonpayment of a debt except a fine or a penalty is the obvious meaning of art. 2, § 13.[6] This meaning, apparent on the face of art. 2, § 13, must be accepted.[7] The clear prohibition against imprisonment for debt is mandatory because the words of art. 2, § 13 neither express nor imply an intent that the provision is directory only.[8]

■ In determining the constitutionality of a legislative enactment, we look to the constitution to determine whether the legislature is prohibited from doing the act.[9] A mandatory provision in our constitution, art. 2, § 13 is a limitation upon the power of the legislature. The object of art. 2, § 13 is the protection of our resident citizens from body attachment by our governmental officials because of a failure to pay a debt. We will not adopt a strict or technical construction of our constitution so as to defeat the evident object and purpose of the constitutional provision, in order to uphold a legislative enactment.[10] Article 2, § 13 prevents the legislature from enacting any statute that would, directly or indirectly,[11] authorize the body attachment of an individual for failure to pay a debt.

The challenged statute, 12 O.S.1991, § 850, states:

The judge after the hearing provided herein may order any property of the judgment debtor, not exempt by law, in his possession or under his control to be applied toward the satisfaction of the judgment, **and may enforce the same by proceeding for contempt in case of refusal or disobedience.**

The judge may further order the judgment debtor to pay to the judgment creditor or apply on the judgment installments, such portion of his non-exempt income, however or wherever earned or acquired, as the court may deem proper after due regard for any payments required to be made by the judgment debtor by virtue of law or prior order of a court or under wage assignments outstanding. Where the judgment debtor claims or is proved to be rendering services to or employed by a relative or other person or by a corporation owned or controlled by a relative or other person, without salary or compensation, or

5. *Wimberly v. Deacon,* 195 Okl. 561, 144 P.2d 447 (1944).

6. *Morgan v. National Bank of Commerce of Shawnee,* 90 Okl. 280, 217 P. 388, 389 (1923).

7. *Shaw v. Grumbine,* 137 Okl. 95, 278 P. 311 (1929).

8. Constitutional provisions are mandatory, unless it appears from the express terms thereof, or by necessary implication from the language used, that they are intended to be directory only. *Jones v. Freeman,* 193 Okl. 554, 146 P.2d 564 (1944) appeal dismissed 322 U.S. 717, 64 S.Ct. 1288, 88 L.Ed. 1558.

9. In ascertaining the constitutionality of a legislative act, we do not look to the constitution to determine whether the legislature is authorized to do an act, but whether the legislature is prohibited from doing an act. *Reherman v. Oklahoma Water Resources Bd.,* 679 P.2d 1296 (Okla.1984).

10. *Williams v. City of Norman,* 85 Okl. 230, 205 P. 144 (1922).

11. This Court is duty-bound to be intolerant of the legislature's attempt to do indirectly that which the constitution directly prohibits. *Reherman v. Oklahoma Water Resources Board,* 679 P.2d 1296, 1301–1302 (Okla.1984), wherein we said:

(W)hat may not be done directly should not be allowed to be done indirectly. Further, as the Court stated in *Trapp v. Cook Const. Co.,* 24 Okl. 850, 105 P. 667, 671 (1909):

An act violating the true intent and meaning of the [Constitution], although not within the letter, is as much within the purview and effect of a prohibition as if within the strict letter; and an act in evasion of the terms of the Constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is clearly void as if in express terms forbidden....

at a salary or compensation so inadequate as to satisfy the court that such salary or compensation is merely colorable and designed to defraud or impede the creditors of such debtor, the court may direct such debtor to make payments on account of the judgment, in installments, based upon a reasonable value of the services rendered by such judgment debtor under his said employment or upon said debtor's then earning ability. The court may from time to time, modify an order made under this section upon application of either party upon notice to the other. **A failure or neglect to comply with an order of direction of the court, shall be punished as for contempt.** [Emphasis added.]

On its face, it is clear that the two paragraphs of § 850 serve different purposes. The obvious purposes of the provisions contained in the first paragraph of § 850 are to require the delivery of the identified property owned by and in the possession or control of the judgment debtor toward the satisfaction of the judgment debt; and to enforce the order for delivery or turn over of property by incarceration, if the judgment debtor unjustly refuses to apply the identified property towards the satisfaction of a judgment. While the obvious purposes of the provisions contained in the second paragraph of § 850 are to require the judgment debtor to set aside and deliver a portion of his/her future income toward the satisfaction of the judgment debt; and to enforce the order for payment of future income by incarceration. It is the contempt provision in the second paragraph which we conclude is violative of the Oklahoma Constitution, art. 2, § 13.

The early decisions upholding the contempt provision in the first paragraph of § 850 differentiated orders to turn over property identified at a hearing on assets

and orders to pay a judgment debt. The creditors' remedy of hearing on assets and turn over orders in the first paragraph of § 850 were adopted from Kansas in 1910.[12] Prior to enactment of § 850, the Kansas statute had been upheld against an imprisonment for debt challenge. *State ex rel. v. Burrows*, 33 Kan. 10, 5 P. 449 (1885). The Kansas Supreme Court construed the contempt provisions to be applicable to orders directing the debtor to turn over identified property in his or her possession at the time the turn over order was entered, rather than an order to pay a debt.

As another ground of error, it is insisted by the appellant ... that the order made was one commanding the appellant to pay a debt, and that to commit him for contempt in failing to obey the order would, in effect, be imprisonment for debt. In such proceedings, "the judge may order any property of the judgment debtor, not exempt by law, in the hands of himself or any person or corporation, or due to the judgment debtor, to be applied towards the satisfaction of the judgment, and may enforce the same by proceedings for contempt, in case of refusal or disobedience." Section 490, Code. In this case the judge found that the appellant had property, which consisted of money in his possession and under his control, not exempt by law, that should be applied towards the satisfaction of the judgment; and ordered that it be so applied. It was not an order to pay a debt, but was a direction to apply certain property, discovered upon the examination to be in the possession of the appellant, to the satisfaction of the judgment against him.

*State ex rel. v. Burrows*, 5 P. at page 452.

Six months later, Burrows was again before the Kansas Supreme Court in an origi-

---

**12.** Revised Laws 1910, § 5198, adopted from Kansas, read as follows:

The judge may order any property of the judgment debtor, not exempt by law, in the hands of either himself or any other persons or corporation, or due to the judgment debtor, to be applied toward the satisfaction of the judgment, and may enforce the same by proceedings for contempt in case of refusal or disobedience; but the earnings of the debtor for his personal services, at any time within three months next preceding the order, cannot be so applied, when it is made to appear, by the debtor's affidavit or otherwise, that such earnings are necessary for the use of a family supported wholly or partly by his labor.

nal proceeding in habeas corpus. *In re Burrows*, 33 Kan. 675, 7 P. 148 (1885). Leaving Burrows committed to jail until the judgment and costs were satisfied, the Kansas Supreme Court said:

> On March 25, 1884, F.H. Kollock and B. Fanning recovered before a justice of the peace of Marion county, in this state, a judgment against Melvin Burrows, aggregating with costs, $325.30.... The judge found that Burrows had, at his examination, upon his person and under his actual control, money to the amount of $1,000.00, not exempt by law, and he then ordered him to apply sufficient of said moneys so in his possession towards the satisfaction of the judgment against him....

*In re Burrows*, 7 P. at page 149.

In denying Burrows claim to a right to trial by jury, the Kansas high court explained the purpose of the statute:

> ... The proceeding in aid of execution, though created by statute, is a proceeding in the action in which the judgment was recovered, after the judgment debtor has had a hearing and trial, and is a substitute for the creditors' bill formerly used in chancery. The proceeding is a simple regulation of well-established and well-defined jurisdiction, which courts of equity were accustomed to employ. After the decree in a court of equity for the delivery of property or effects, the debtor, upon disobeying the decree was adjudged for his contumacy guilty of contempt of the authority of the court. He, therefore, could be imprisoned so long as he remained in contempt. Obedience, however, to the decree,—that is, the delivery of the property,—would terminate the imprisonment at any time. The purpose of the statute is to require the delivery of the property of the judgment debtor for the payment of his debts; and if it is made, the debtor cannot be imprisoned. It is only when the debtor has property which he unjustly refuses to apply towards the satisfaction of a judgment, after being afforded an opportunity so to do, that he can be imprisoned....

*In re Burrows*, 7 P. at page 150.

The Kansas court concluded that:

We therefore conclude that the provisions of the Code "in aid of execution," conferring upon the district judge the power to require a judgment debtor to appear before him to answer concerning his property, which he unjustly refuses to apply towards the satisfaction of a judgment recovered against him, and to order any money or other property in his actual possession and under his control, not exempt by law, to be delivered up and applied towards the satisfaction of the judgment under which the proceedings are had, and to enforce said orders by proceedings for contempt in case of refusal or disobedience, are not violative of sections 5, 10, or 16 of the bill of rights of the constitution of the state, or the fifth amendment of the federal constitution. Sections 483, 490, Code; *State v. Burrows, supra.*

> ... In this case, Burrows is imprisoned simply and wholly because he will not deliver up money in his possession and under his control in payment of the judgment. He can terminate the imprisonment at any time by the mere exercise of his own will; that is, by satisfying the original judgment and costs, and the costs of the supplementary proceedings,—all of which, under the findings of the district judge, he has the ability to do.

*In re Burrows*, 7 P. at pages 151 and 152.

Hence, the validity of the contempt provisions in § 850 hinges upon the orders to be enforced by contempt. The contempt provision upheld in *Burrows* serves to preserve the integrity of the turn over orders which are based upon proof that the judgment debtor "had, at his examination, upon his person and under his actual control" the property which he was directed to apply toward satisfaction of the judgment debt. The challenged contempt provision of § 850 serves to enforce orders directing payment of future income toward satisfaction of a judgment debt which are based upon proof that the judgment debtor may or has the capacity to earn income from employment or other rendering of services

in the future which he or she is directed to pay toward satisfaction of a judgment debt.

In this context, orders directing delivery of future earnings must be distinguished from orders directing delivery of earnings in the possession of the judgment debtor at the time of issuance of the turn over order. The early versions of § 850 specifically provided that any funds in the possession of the debtor which were earned during the preceding ninety days could not be applied to the judgment debt if the debtor demonstrated the need for such funds for family support. This Court has upheld the application of non-exempt earnings in the hands of the debtor toward satisfaction of a judgment debt. *Smith v. Britton*, 185 Okl. 76, 89 P.2d 953 (1939).

The contempt provision at issue was enacted in 1965.[13] The constitutionality of the challenged contempt provision in 12 O.S.Supp.1965, § 850 for failure to obey installment payment orders was addressed in *Freeman v. Heiman*, 426 F.2d 1050 (10th Cir.1970). The appellant, Heiman, challenged the constitutionality of the provisions authorizing the courts to order installment payments toward satisfaction of a judgment debt and authorizing the courts to punish for contempt the failure to pay as ordered.[14] In holding that the contempt provision in § 850 does not contravene art. 2, § 13, the Tenth Circuit reasoned that the contempt proceeding is designed to punish for failure to make payment from existing funds. Recognizing that this court has not construed § 850 and citing *In re Burrows* and *State v. Burrows*, inter alia, the Tenth Circuit stated:

> A number of states have enacted statutes providing for the installment payment of judgments similar to § 850. . . .

The purpose of such statutes is not to settle disputes as to ownership of property, but to aid judgment creditors in the discovery of a debtor's nonexempt assets and their application to unsatisfied judgments. If the court finds from the evidence that a judgment debtor has income over and above the statutory exemptions, sufficient to partially pay the judgment, it may order the payment in installments. The authorized contempt proceeding to enforce the order is designed to punish for failure to make the required payments from existing funds and not for failure to satisfy the judgment debt.

*Freeman v. Heiman*, 426 F.2d at 1052.

We find the reasoning of the Tenth Circuit in *Freeman v. Heiman* to be contrary to *Burrows* and inconsistent with art. 2, § 13. The fallacy in the Tenth Circuit's reasoning is its characterization of an order directing future installment payments as an order directing payment from existing funds. Clearly, installment payments toward satisfaction of a judgment debt were ordered in *Freeman v. Heiman* because the evidence established that Heiman had the capacity to earn $40,000.00 in the next succeeding year. Heiman's expected income during the next year was not an existing fund at the time the order was entered. Further, the Tenth Circuit relied upon decisional law from jurisdictions which had only statutory prohibitions against imprisonment for debts rather than clear state constitutional prohibitions similar to art. 2, § 13.[15]

In mandatory language, the challenged contempt provision requires the punishment of a debtor who, whether willfully or negligently, fails to comply with an order

---

13. Okla.Sess.Laws 1965, ch. 300, § 6. As stated previously, Section 850 contains two contempt provisions. The language of the challenged contempt provision in § 850 has not been amended since its enactment in 1965.

14. *Freeman v. Heiman*, 426 F.2d at page 1051.

15. The Tenth Circuit cited the New York case of *Reeves v. Crownshield*, 274 N.Y. 74, 8 N.E.2d 283, 111 A.L.R. 389 (1937) and adopted the reasoning of those states and Canadian jurisdictions set out in the A.L.R. annotation. At the

time of the Tenth Circuit opinion, the constitutions of forty-one states included a prohibition against imprisonment for debt, while the other nine states, including New York and several other jurisdictions cited in the annotation at 111 A.L.R. 389, had a statutory ban against imprisonment for debt. Oklahoma, then and now, provided an absolute prohibition against imprisonment for debt. See, 80 Yale L.R. 1679, 1679, note 1, (1971) for a listing of the states which had constitutional bans against imprisonment for debt.

directing periodic payments out of non-exempt earnings or other income toward satisfaction of a judgment debt.[16] The legislature has defined contempts as direct and indirect. 21 O.S.1991, § 565.[17] Whether a contempt is direct or indirect, the legislature has authorized punishment to consist of a fine not exceeding $500.00 and/or a sentence not exceeding six months in the county jail, at the discretion of the trial court. 21 O.S.1991, § 566. The legislature has not provided any special proceedings or punishments for contempts of installment payment orders under § 850. The legislature has not excluded punishment by incarceration in the county jail for those contempts authorized to aid a creditor in enforcing payment of a judgment debt. Because the contempt proceeding contemplated by the last sentence in § 850 may result in the incarceration of a debtor for failure to pay a judgment debt, we find the last sentence of § 850 to be contrary to the express terms of art. 2, § 13.

We hold that the art. 2, § 13 prohibits the legislature from authorizing enforcement of a money judgment in an indirect civil contempt proceeding wherein the debtor may be punished by incarceration in the county jail and that the last sentence in § 850 is constitutionally impermissible and void. We find that the challenged contempt provision in § 850 is severable,[18] and hold that the last sentence of 12 O.S.1991, § 850 is stricken from the statute.

As we noted earlier, this appeal does not challenge the contempt provision in the first paragraph of § 850 authorizing contempt proceedings to enforce district court orders directing the judgment debtor to turn over property in his/her possession or control toward satisfaction of a judgment. We emphasize that this opinion does not affect the contempt provisions in the first paragraph of § 850. The reasoning and holding of this opinion is expressly restricted to the challenged contempt provision in the last sentence of 12 O.S.1991, § 850. We are also cognizant of the presumption of validity[19] of the challenged contempt provision in § 850 since its enactment in 1965. The effect of this opinion shall be prospective and operative as to the contempt proceeding below and all other contempt proceedings initiated pursuant to the last sentence of § 850 and pending before the district courts or the appellate courts. The Honorable R.B. McClain, Associate District Judge for Garvin County, is hereby prohibited from exercising any further judicial power pursuant to 12 O.S.1991, § 850 which may result in the incarceration of petitioner for the failure to make installment payments on the judgment debt.

APPLICATION TO ASSUME ORIGINAL JURISDICTION GRANTED; WRIT OF PROHIBITION ISSUED.

OPALA, C.J., HODGES, V.C.J. and ALMA WILSON, KAUGER, SUMMERS and WATT, JJ., concur.

LAVENDER, SIMMS and HARGRAVE, JJ., dissent.

OPALA, Chief Justice, concurring.

The narrow question to be answered in this original proceeding for a prerogative writ is whether *the use of contempt*, authorized by the second paragraph in § 850[1] to

---

**16.** The authorized installment payments out of the debtor's present and future non-exempt income from earnings or investments in § 850 is in addition to the prejudgment and post-judgment garnishment remedies, including the six month continuing garnishment, available to creditors in 12 O.S.1991, §§ 1171, et seq.

**17.** The Oklahoma Constitution, art. 2, § 25 requires the legislature to define contempts and regulate the proceedings and punishment for contempts. We note that ordinary acts of negligence are not within the statutory definition of direct nor indirect contempts. Willfulness is expressly a required element of indirect contempt. The last sentence of § 850, mandating punishment for contempt for negligent failure to comply with a court ordered direction is inconsistent with 21 O.S.1991, § 565.

**18.** *Atchison, T. & S.F. Ry. v. Long*, 122 Okl. 86, 251 P. 486 (1926).

**19.** *Reherman v. Oklahoma Water Resources Board*, 679 P.2d 1296, 1300 (Okla.1984); *Earnest, Inc. v. LeGrand*, 621 P.2d 1148, 1153 (Okla. 1980).

**1.** The pertinent terms of 12 O.S.1991 § 850 are:
"The judge after the hearing provided herein may order any property of the judgment

punish a debtor's nonpayment of judicially scheduled installments on a money judgment, violates Oklahoma's constitutional interdiction of imprisonment for debt.[2]

The court assumes original cognizance and grants a writ of prohibition. Today's pronouncement invalidates those provisions in § 850 which sanction contempt power's use to punish a debtor's failure to pay installments scheduled in a postjudgment order. I concur in the court's disposition which (a) declares the contested provisions of § 850 to be violative of the constitutional interdiction of imprisonment for debt and (b) condemns contempt as an impermissible remedial device for enforcing compliance with *a general postjudgment order that directs the debtor to pay an adjudicated obligation in installments but does not identify any specific non-exempt assets then in existence and available for application towards the judgment's satisfaction.*

I write separately to explain and to re-emphasize the court's rationale that postjudgment orders directing an obligor (a) to pay from a specified non-exempt fund or account, (b) to deliver described non-exempt property in a person's possession or under one's control or (c) to sell a specific non-exempt asset and use the proceeds to pay

> debtor, not exempt by law, in his possession or under his control to be applied toward the satisfaction of the judgment, and may enforce the same by proceedings for contempt in case of refusal or disobedience.
>
> The judge may further order the judgment debtor to pay to the judgment creditor or apply on the judgment in installments, such portion of his nonexempt income, *however or wherever earned or acquired,* as the court may deem proper after due regard for any payments required to be made by the judgment debtor by virtue of law or prior order of a court or under wage assignments outstanding.... *A failure or neglect to comply with an order of direction of the court, shall be punished as for contempt."* (Emphasis mine.)

2. The terms of Art. 2, § 13, Okl. Const., are: "Imprisonment for debt is prohibited, except for the non-payment of fines and penalties imposed for the violation of law."

3. RL 1910, § 5198. *See* 12 O.S.1991 § 850, Historical Notes.

4. *Lee Way Motor Freight, Inc. v. Welch,* Okl., 764 P.2d 191, 195 n. 14 (1988); *Matter of Estate of*

scheduled installments may be enforced by contempt, *while orders that generally call for payment of money adjudged to be owing cannot.*

## I

### KANSAS JURISPRUDENCE BEFORE OKLAHOMA'S STATEHOOD

Oklahoma's statutory procedure in aid of execution came from Kansas.[3] A Kansas appellate opinion promulgated before our statehood, which construes a statute later adopted by this State, is by force of law incorporated into the text of our adopted statute.[4]

Kansas jurisprudence antedating our statehood—*Burrows I, Burrows II and O'Connell*[5]—and extant Oklahoma decisional law[6] applying the teachings of the *binding Kansas authority* are consistent with the notion that orders directing *delivery of specific non-exempt property* to be applied towards the satisfaction of a debt and orders for *payment from an identifiable non-exempt fund* then in existence and available must be distinguished from *general orders* for payment of a debt. The former are enforceable by contempt as they call for specific acts *facially capable of immediate performance.*[7] The latter—

*Speake,* Okl., 743 P.2d 648, 650 n. 5 (1987); *Atlantic Richfield Co. v. State,* Okl., 659 P.2d 930, 934 (1983); *Horath v. Pierce,* Okl., 506 P.2d 548, 554 (1973).

5. *State v. Burrows,* 33 Kan. 10, 5 P. 449 (1885) (*Burrows I*); *In re Burrows,* 33 Kan. 675, 7 P. 148 (1885) (*Burrows II*); *In re O'Connell,* 49 Kan. 415, 30 P. 456 (1892).

6. *Ryland v. Arkansas City Milling,* 19 Okl. 435, 92 P. 160, 162–163 (1907).

7. A *general* order in aid of execution which directs a debtor to pay the judgment in installments out of his future earnings (i.e., nonexempt income as defined by 31 O.S.1991 § 1) does not command a specific act facially shown to be capable of immediate performance. Such an order is not enforceable by contempt either under pre-statehood jurisprudence from Kansas (*Burrows I, Burrows II, O'Connell, supra* note 5 and *infra* note 9) or under Oklahoma's decisional law (*Ryland, supra* note 6). *Although § 850 indeed serves a salutary purpose in that it facilitates collection of money judgments by affording*

i.e., general orders—command no more and no less than *payment of a debt* within the meaning of Art. 2, § 13, Okl. Const.,[8] which *prohibits* imprisonment as a remedy for collection of a debt.

These pre-statehood cases from Kansas eloquently teach that the judiciary is not powerless to enforce by imprisonment *a disobeyed order, other than one directing generally the payment of money*, when the commanded performance by the debtor calls for a *specific act that would bring about a non-exempt property's applica-*

> creditors the opportunity to secure a division of the adjudged obligation into small installments and to schedule payments in a convenient timetable, its provisions for enforcement of unpaid installments by contempt cannot pass muster in the face of the fundamental law's unequivocal prohibition of imprisonment for debt.

**8.** For the provisions of Art. 2, § 13, Okl. Const., see supra note 2. The § *13 prohibition of imprisonment for debt is couched in absolute terms.* There is hence no room for according a different treatment to those who *willfully refuse to pay a debt* and those who are unable to pay it because they lack resources. *Insofar as general orders to pay money are affected, both classes of delinquent debtors must be treated alike.* Both are clearly protected by the absolute terms of our fundamental law's command. The dissent appears to make a distinction between an adjudicated debt's *accrued* unpaid installments and payments ordered to be made in the future. The dissent concludes that the former may result in one's *willful failure* to pay an accrued debt. The distinction drawn by the dissent appears irrelevant. ·Unless an order facially shows that there is identified non-exempt property available for a debt's satisfaction, contempt process for the order's enforcement will necessarily fall under the axe of our constitutional condemnation.

The court correctly concludes here that *Freeman v. Heiman*, 426 F.2d 1050 (10th Cir.1970), a federal case which holds that the § 850 contempt provisions *do not* violate our constitutional interdiction of imprisonment for debt, is unpersuasive. Today's opinion wisely rejects *Freeman's* teachings as utterly inconsistent with our State's constitutional mandate. I concur in the court's view. A federal court's pronouncement on a state-law question is *never* binding on this court. *Stewart v. Amerada Hess Corp.,* Okl., 604 P.2d 854, 857 (1980); *McLin v. Trimble*, Okl., 795 P.2d 1035, 1044–1045 (1990) (Opala, V.C.J., dissenting). Where there is no controlling U.S.Supreme Court precedent, we often *opt as a matter of comity* to follow federal-law jurisprudence of the U.S. Court of Appeals for the 10th Circuit. *See, e.g., Phillips v. Williams*, Okl., 608

*tion towards the satisfaction of a money judgment.*[9]

## II

## COERCIVE BODY RESTRAINT PROCESS TO COLLECT A DEBT FALLS WITHIN THE CONSTITUTIONAL INTERDICTION OF IMPRISONMENT FOR DEBT

Contempt may not be sanctioned as less odious and hence as a permissible variant of the abolished common-law *capias.*[10]

P.2d 1131, 1135 (1980); *McLin, supra* at 1047 n. 17 (Opala, V.C.J., dissenting).

**9.** In *Burrows I, supra* note 5, the judgment debtor in a proceeding in aid of execution was found to have nonexempt property "in his possession and under his control" which should be applied toward the satisfaction of an adjudicated debt. The debtor was later held in contempt *for willfully refusing to comply with the court's order.* The appellate opinion viewed the order not as one to pay a debt, but rather as "a direction to apply certain property, discovered upon the examination to be in the possession of the appellant, to the satisfaction of the judgment against him." *Id.* 5 P. at 452. In *Burrows II, supra* note 5, a related habeas corpus proceeding, the court opined that a debtor *could be imprisoned only when he "has property which he unjustly refuses to apply towards the satisfaction of a judgment, after being afforded the opportunity so to do." Id.* 7 P. at 150 (emphasis supplied).

*O'Connell, supra* note 5, held fatally infirm an order imprisoning a judgment debtor based on "a *general finding* that the petitioner had money and property in his possession and under his control which he unjustly refused to apply to the payment of his debts...." The order's infirmity was said to consist of its failure to specify "the kind of property, or state the amount of money the petitioner had in his possession ... [and to] describe the property under his control." *Id.* 30 P. at 456 (emphasis added). Citing *Burrows II*, the court stated that "[i]n proceedings in aid of execution, where an examination has resulted in the disclosure that the debtor unjustly *refused to apply money or property which he has in his possession or under his control* to the satisfaction of a judgment rendered against him, the practice is for the court or judge to order the judgment debtor to deliver over a sufficient sum of money or turn out property enough to satisfy such judgment and costs; and then, if he willfully disobeys such order, the same may be enforced by proceedings for contempt...." *Id.* at 456.

**10.** *Capias* is the "general name for several species of writs, the common characteristic of

The ancient creditors' remedies of body attachment (*capias ad respondendum*)[11] and body execution (*capias ad satisfaciendum*)[12] have existed in many forms since the earliest days of Roman and English law, where imprisonment was permitted for nearly any type of debt.[13] These methods of enforcing debts were initially adopted by American colonies during their early development.[14] An eighteenth-century recognition of these remedies' harshness led to efforts to abolish their use, most notably by state constitutional prohibitions against imprisonment for debt.[15] Our fundamental law specifically abrogates *capias* for debt. Art. 2, § 13, Okl. Const.[16] *All forms of coercive body restraint process that may lead to imprisonment for debt—whether by body attachment, by some new and cloaked form of resurrected capias or by an ancient writ like that of ne exeat*[17]— must fall under the explicit constitutional axe.[18] In short, no *coercive body restraint process is constitutionally permissible as a substitute for the writ of execution to enforce a general order for payment of judicially scheduled installments on a money judgment.*

which is that they require the officer to take the body of the defendant into custody." Black's Law Dictionary 188 (5th Ed.1979).

**11.** *Capias ad respondendum (ca. resp.)* is a "judicial writ ... by which actions at law were frequently commenced; and which commands the sheriff to take the defendant, and him safely keep, so that he may have his body before the court on a certain day, to answer the plaintiff in the action...." Black's Law Dictionary, *supra* note 10 at 188.

**12.** *Capias ad satisfaciendum (ca.sa.)* is a "writ of execution ... which commands the sheriff to *take* the party named, and keep him safely, so that he may have his body before the court on a certain day, *to satisfy* the damages or debt and damages in certain actions. It deprives the party taken of his liberty until he makes the satisfaction awarded...." Black's Law Dictionary, *supra* note 10 at 188. The executory process of imprisonment by means of *ca.sa.* originally lay at common law only in trespass *vi et armis* and later came to be extended by statute to other cases. *See Forsythe v. Washtenaw Circuit Judge,* 180 Mich. 633, 147 N.W. 549, 550 (1914); *Potter v. Wilson,* Okl., 609 P.2d 1278, 1280 (1980).

**13.** Ford, Imprisonment for Debt, 25 Mich.L.Rev. 24 (1926).

## SUMMARY

Insofar as § 850 authorizes contempt as a means of compelling payment of money adjudged to be owing either in a judgment or in a postjudgment order scheduling installment payments, it is violative of *the absolute and explicit constitutional interdiction of imprisonment for debt.* Today's pronouncement is expressly confined to the effectiveness of the last sentence in 12 O.S.1991 § 850. *The use of contempt to enforce orders or awards in matrimonial litigation is not affected by our pronouncement.*

SIMMS, Justice, dissenting:

Today the majority reaches out to incorrectly decide a case that is not ripe for adjudication. At the time this original action was filed, a hearing on the application for a contempt citation had not been held. We have no evidence before us that a hearing has occurred, and Lepak, petitioner herein and defendant below, does not allege that one was conducted. Without first

**14.** Notes, *Body Attachment and Body Execution: Forgotten, But Not Gone,* 17 Wm. & Mary L.Rev. 543–550 (1976).

**15.** *Notes, supra* note 14 at 548–550.

**16.** For the terms of Art. 2, § 13, Okl. Const., *supra* note 2.

**17.** *Ne exeat* is a "writ which forbids the person to whom it is addressed to leave the country, the state, or the jurisdiction of the court...." Black's Law Dictionary, *supra* note 10 at 929.

**18.** Only those who fail to pay statutorily imposed fines or penalties are expressly excluded from the purview of Art. 2, § 13, Okl. Const., *supra* note 2; *Potter, supra* note 12 at 1280–1281.

The dissent appears to attach some significance to a perceived distinction between common-law *capias* and the contempt process because only the latter but not the former affords the debtor a pre-commitment hearing. The constitution's *absolute interdiction* admits of no legal difference between imprisonment for debt *after a hearing* and one that occurs *sans* hearing. Our fundamental law *prohibits more than mere commitment to debtors' prison without an anterior judicial hearing;* it *absolutely* and explicitly protects from *all* forms of imprisonment for debt.

being afforded a hearing, Lepak cannot be imprisoned for contempt. Okla. Const. Art. 2, § 25; *Martin v. Kroeger*, 149 Okl. 119, 299 P. 472 (1931); *Ex parte Morse*, 141 Okl. 75, 284 P. 18 (1930). To date, Lepak has not been adjudged in contempt and is in no threat of being imprisoned.

In *Rath v. Maness*, 470 P.2d 1011 (Okla.1970), this Court refused to pass upon the constitutionality of the statute at issue, 12 O.S.1981, § 850, because the challenge to it was premature. Therein, the trial court ordered the defendant to pay plaintiff $5.00 each week pursuant to the provisions of § 850. Defendant immediately perfected an appeal to this Court arguing that the portion of § 850 authorizing installment payments on judgment debts and enforcement of the payments by contempt proceedings was violative of the prohibition on imprisonment for debt found in Okla. Const. Art. 2, § 13. In response, this Court unanimously held:

"Under the present circumstances the question of the constitutionality of the law is not one that this court is required to determine at this time. Defendant appealed directly from the order [to pay installments]. He had not been cited for contempt for failure to make the payments and he was not about to be denied some right or privilege to which he was lawfully entitled.

"This court will not pass upon the constitutionality of an act of the Legislature, nor any of its provisions, until there is presented a proper case in which it is made to appear that the person complaining by reason thereof has been or is about to be denied some right or privilege to which he is lawfully entitled or who is about to be subjected to some of its burdens or penalties. *Starner v. Oklahoma City*, 205 Okl. 170, 236 P.2d 479." 470 P.2d at 1014.

The original action before us is a premature attempt to have this Court pass upon the constitutionality of § 850 under circumstances which do not require action. Lepak is in no danger at this time of being subjected to the burdens or penalties of § 850; he has not been cited for contempt.

Therefore, this application for a writ of prohibition should be denied.

Additionally, even if it could be argued that the constitutional challenge is properly before this Court, Lepak waived such challenge by agreeing to be bound by the statutory installment payments on the judgment debt. The majority notes at the outset that *the parties agreed* for the money judgment to be paid in installments. In fact, the order entered in aid of execution reads, in pertinent part, as follows:

"and upon agreement by and between both parties, said defendant agrees to pay the total sum of $12,400.00, as full satisfaction of the judgment rendered herein on June 2, 1988, payable as follows, to wit: the sum of $2,400.00 on or before August 30, 1988, the sum of $200.00 on or before September 12, 1988, and a like sum of $200.00 each succeeding week thereafter, ... until the sum of $12,400.00, is fully paid."

There is no evidence before this Court that Lepak objected to this order or appealed it. On its face, the order indicates that Lepak was in full agreement with the trial court and the plaintiff to pay for the judgment in installments pursuant to 12 O.S. 1981, § 850. Hence, Lepak has waived any objections to such installment payments and any challenges to the constitutionality of § 850. The majority erroneously addresses an objection which the petitioner himself has allowed to lapse.

The above-stated reasons are sufficient to warrant denial of Lepak's writ. However, in any event, the majority's resolution of the issue is erroneous.

First, we are not concerned with "imprisonment for debt" in the sense that Lepak is threatened with incarceration for failing to pay an installment payment on a promissory note or the like. Rather, a *judgment* was entered against him, and any debt he previously owed was merged, along with the cause of action, into the judgment. *Nye v. Prairie Oil & Gas Co.*, 105 Okl. 104, 238 P. 962 (1924); *Cressler v. Brown*, 79 Okl. 170, 192 P. 417 (1920); 46 Am.Jur.2d *Judgments*, § 387 (1969); 50 C.J.S. *Judgments*, § 599 (1947).

Once the debt was reduced to a judgment, the judgment acted to "declare the existence of the debt, fix its amount, and secure to the creditor the means of enforcing its payment." 50 C.J.S. *Judgments*, § 600 at p. 24 (1947). Thus, the judgment creates a new debt or liability, distinct from the original claim or demand. *Id.* Indeed, this new liability, or judgment debt, holds a position of priority over general debts and can become liens on real estate of the judgment debtor under 12 O.S.1991, § 706.

This distinction between a debt, created by a promissory note or other general money obligation, and a judgment is important because it highlights the difference between imprisoning one for failing to pay their debts and imprisoning one for disobeying a court order to pay on a judgment. Although the former is constitutionally impermissible, the latter does not violate the constitutional prohibition against imprisonment for debt.

Next, the majority decision overrules 100 years of state constitutional precedent. The ruling renders trial judges of Oklahoma impotent to enforce their orders issued in hearings in aid of execution. Likewise, it delivers a crushing blow to the rights of creditors in their efforts to satisfy valid judgments.

Oklahoma statutes pertaining to hearings in aid of execution had their origin in the state of Kansas. Okla.Rev.Laws 1910, § 5198. *See* 12 O.S.A. 1991, § 850 and the Historical Notes thereunder. It is very important to note that Kansas, like Oklahoma, has a constitutional provision prohibiting imprisonment for debt. Kan. Const. Bill of Rights, § 16 [1]; Okla. Const. art. 2, § 13.

The proposition advanced by the majority is hardly new. In 1885, the State of Kansas addressed this exact proposition; that is, whether imprisonment for failure to obey a court order to pay on a valid judgment following a hearing in aid of execution constituted imprisonment for debt. *In re Burrows*, 33 Kan. 675, 7 P. 148 (1885) (*Burrows II*). The Supreme Court of the State of Kansas unequivocally said no. That Court has not, to this day, changed its position, for the pronouncement in *Burrows II* has neither been overruled nor modified.

*Burrows II* was a follow-up case to *State v. Burrows*, 33 Kan. 10, 5 P. 449 (1885) (*Burrows I*) which not only discusses the constitutional prohibition against imprisonment for debt in Kansas but also notes the "in aid of execution" statute from which 12 O.S.1991, § 850 originated.

In *Burrows I,* the Kansas Supreme Court addressed the argument before us. There, a judgment was rendered against the defendant, and proceedings were brought in aid of execution of that judgment pursuant to a statute like § 850. The trial court determined that the defendant had nonexempt property which could be applied towards the debt and ordered the defendant to pay the plaintiff from that property. When the defendant failed to comply, contempt proceedings were instituted. After a contempt hearing was had, the defendant was deemed in contempt and ordered to be imprisoned until he complied with the order. The defendant appealed arguing "that to commit him for contempt in failing to obey the order would, in effect, be imprisonment for debt."

The court then discussed the statute which authorizes the judge to order satisfaction of a judgment through nonexempt property and enforce that order through contempt proceedings, holding:

"In this case the judge found that the appellant had property, which consisted of money in his possession and under his control, not exempt by law, that should be applied towards the satisfaction of the judgment; and ordered that it be so applied. It was not an order to pay a debt, but was a direction to apply certain property, discovered upon the examination to be in the possession of the appellant, to the satisfaction of the judgment against him.

1. Section 16 of the Bill of Rights, Constitution of the State of Kansas, reads:

"No person shall be imprisoned for debt, except in cases of fraud."

"A showing by the judgment debtor that his disobedience of the order was not willful or contumacious, but was occasioned by a lack of money or property with which to satisfy the judgment, would ordinarily entitle him to a discharge; and a commitment for contempt, based on the refusal to obey an order in such a case, would probably be in violation of our constitution, which forbids imprisonment for debt, except in cases of fraud." 5 P. at 452.

The case again came before the Kansas Supreme Court that same year in a *habeas corpus* proceeding. *In re Burrows, supra* (*Burrows II*). In explaining the operation of the "in aid of execution" statute, the court stated:

"The proceeding in aid of execution, though created by statute, is a proceeding in the action in which the judgment was recovered, after the judgment debtor has had a hearing and trial, and is a substitute for the creditors' bill formerly used in chancery. The proceeding is a simple regulation of well-established and well-defined jurisdiction, which courts of equity were accustomed to employ. After the decree in a court of equity for the delivery of the property or effects, the debtor, upon disobeying the decree, was adjudged for his contumacy guilty of contempt of the authority of the court. He, therefore, could be imprisoned so long as he remained in contempt. Obedience, however, to the decree,—that is, the delivery of the property,—would terminate the imprisonment at any time. The purpose of the statute is to require the delivery of the property of the judgment debtor for the payment of his debts; and if it is made, the debtor cannot be imprisoned. *It is only when the debtor has property which he unjustly refuses to apply towards the satisfaction of a judgment, after being afforded the opportunity so to do, that he can be imprisoned. 'The imprisonment is not for debt, but for the neglect and refusal to perform a moral and legal duty, the performance resting in his ability.'* BRICKELL, C.J., in *Ex parte Hardy,* 68 Ala. 339." (Emphasis added) 7 P. at 150.

Ultimately concluding that the statute did not violate the prohibition against imprisonment for debt in the Kansas Constitution, the court further held:

"In this case, Burrows is imprisoned simply and wholly because he will not deliver up money in his possession and under his control in payment of the judgment. He can terminate the imprisonment at any time by the mere exercise of his own will; that is, by satisfying the original judgment and costs, and the costs of the supplementary proceedings,—all of which, under the findings of the district judge, he has the ability to do." 7 P. at 152.

In attempting to distinguish the *Burrows* cases, the majority places much emphasis upon the "future" character of the installment payments. The majority suggests that because the installment payments which Lepak agreed to were to come from earnings he would receive in the future, the payment upon the judgment debt was from property which was not identified at the hearing. The majority misses the point in allowing installment payments.

First, the Legislature provided for the payment of judgments by installments in § 850 both to assist judgment creditors in satisfaction of their judgments and to aid judgment debtors in making payment of the judgment easier. Installment payments on judgments ease the burden on the judgment debtor from having to pay a lump sum payment from his then available property by spreading out the payments over a period of time. Moreover, an installment plan facilitates the payment of the judgment without requiring the judgment debtor to come before the court every sixty days to answer as to what property he has to apply towards the judgment. Installment payments have been authorized since statehood because the statute which preceded § 850, R.L.1910, § 5198, provided for the judgment debtor's *earnings* to be applied to pay the judgment.

Secondly, and more importantly, a finding of contempt against Lepak under § 850, if ever made, would be for *install-*

ment payments which are already due and owing, and hence, future earnings are not the basis of the contempt citation. In the order directing Lepak to pay, the court ordered payments of $2,400.00 in August, 1988, $200.00 in the second week of September, 1988, and $200.00 each week thereafter until the entire $12,400.00 was paid. If Lepak had adhered to this schedule, the judgment would have been paid in its entirety in late August or earlier September of 1989. The application for a contempt citation was filed on August 30, 1991, exactly two years after the final payment was due and owing under the order. Therefore, the contempt citation sought is not for future earnings, but for wilful failure to make the court ordered payments which are now all due and owing. Lepak has already disobeyed the court's order, and the majority's distinction on the grounds of "orders directing delivery of future earnings" has no foundation.

Moreover, *Burrows II,* was followed and cited by Oklahoma, in the case of *Ryland v. Arkansas City Milling Co.,* 19 Okl. 435, 92 P. 160 (1907). Therein, this Court held that failure to obey an order of the district judge issued in aid of execution was grounds for contempt proceedings which *may* lead to imprisonment.

Finally, closer analysis of the question discloses that imprisonment is not for debt, but rather, for failure to obey an order of the court. Article 2, § 13 of the Oklahoma Constitution prohibits the imprisonment of a debtor for nonpayment of that debt but does not prohibit imprisonment for contempt of court.

The final sentence of § 850 states that "[a] failure or neglect to comply with an order of direction of the court, shall be punished as for contempt." This provision is not an authorization to attach the body of a debtor for failing to pay his debt as the majority holds. Rather, the clause is an effort to put teeth into the trial court's order regarding a judgment. Article 2, § 25 of the Oklahoma Constitution grants to the legislature the power to "pass laws defining contempt and regulating the proceedings and punishment in matters of con-

tempt." The provision in § 850 authorizing the district court to enforce its order via contempt proceedings is in keeping with that authority.

Article 2, § 25 further prohibits the imposition of contempt without first being given a hearing on the charge of contempt. The trial court in the case at bar has docketed a hearing on the application for a contempt citation, and Lepak will have an opportunity to explain why he has failed to comply with the court-ordered installment payments. If the court finds that Lepak is capable of paying the installments but is wilfully refusing, then contempt would lie against him. *Ryland, supra; Burrows II, supra.* However, if the court determines that Lepak does not have sufficient nonexempt property to meet his other obligations and also pay the ordered installments, then imprisonment for contempt of court would not be appropriate. *Id.* Thus, the statute on its face does not imprison for debt but only for willful and contumacious disregard of the court's order.

Another important safeguard placed within § 850 is the reference to the judgment debtor's rights under exemption statutes. By authorizing the trial court to "order the judgment debtor to pay to the judgment creditor or apply on the judgment in installments, *such portion of his nonexempt income,*" 12 O.S.1981, § 850 (emphasis added), the Legislature specifically indicated that some, if not all, of the judgment creditor's income would be exempt. Title 31 O.S.1991, § 1, lists the types of property which are exempt from attachment, execution or other forced sale. Subsection 18 of 31 O.S.1991, § 1 exempts:

"Seventy-five percent (75%) of all current wages and earnings for personal or professional services earned during the last ninety (90) days, except as provided in Title 12 of the Oklahoma Statutes in garnishment proceedings for collection of child support;"

Therefore, no more than twenty-five percent (25%) of Lepak's wages may be applied to the judgment. However, the exemption statutes give even more protection. Under 31 O.S.1991, § 1.1, a judgment

debtor may apply to have *all* his wages and earnings declared exempt upon showing the court that the wages and earnings are necessary for the maintenance of a family supported wholly or partially by the labor of the judgment debtor.

Hence, Lepak could have applied for all his wages and earnings to be made exempt from execution. There is nothing in the record to indicate that Lepak resorted to the protection afforded him under § 1.1, but I note these exemption statutes to show that the Legislature has gone to great lengths to provide protection to judgment debtors. Section 850 explicitly includes such protection.

Additionally, the majority's ruling fulfills the prophetic warning given by Justice Hargrave in his dissent to *Potter v. Wilson*, 609 P.2d 1278 (Okla.1980). In *Potter*, the terms of a divorce decree gave title to a jointly-owned enterprise to the wife along with the outstanding indebtedness of the business thereby holding the husband harmless for that debt. When the wife defaulted on the debt, the husband brought a citation for contempt against the wife requesting the district court to use her contempt powers to enforce the divorce decree. The wife applied for a writ of prohibition, and a bare majority of this Court held that Okla. Const. art. 2, § 13, barred the district court from coercing "payment of a civilly adjudicated claim for money" by imprisonment.

In a dissent joined by Justices Barnes, Doolin and this writer, Justice Hargrave pointed out that the district court had the inherent power to use contempt to enforce its orders. He further stated:

"I feel the majority's rationale is as applicable to 12 O.S.1971 § 850 as it is to the instant proceeding, which fact is an indicia of the error promulgated here ..." 609 P.2d at 1282.

Thus, in *Potter*, this Court took a large step toward erasing unquestioned inherent power of a court to enforce its orders by contempt. The majority in the instant case is taking another step in stripping the courts of their power.

Furthermore, I am disturbed with the majority's distinction of *McCrary v. McCrary*, 723 P.2d 268 (Okla.1986), in which the Court addressed a statute similar in operation to § 850. The statute, 12 O.S.Supp.1985, § 1276.2, provides:

"Any order for the payment of money as part of a division of spousal property pursuant to a divorce or separate maintenance action, if willfully disobeyed, may be enforced as an indirect contempt of court."

In discussing the effect of the statute, the majority, using the same pen, wrote:

"We find the contempt power above conferred does not contravene the constitutional interdiction of imprisonment for debt in that contempt lies not for debts incurred, but is limited to enforcement against the offending party who has *willfully disobeyed an order of the court*." 723 P.2d at 271. (Emphasis in original)

Section 850, like § 1276.2, does not authorize imprisonment for debts, but rather, is limited to enforcement of an order disobeyed by the contemnor.

Likewise, § 850 does not constitute a resurrection of the common law *capias* as Chief Justice Opala implies in his concurring opinion. As the Black's Law Dictionary definition indicates, the *capias ad satisfaciendum* was a writ which authorized the sheriff to arrest and jail the judgment debtor in a civil action until he satisfied the damages or debt. It is obviously distinguishable from § 850, however. *Capias* authorized immediate imprisonment, whereas § 850 first requires a hearing in aid of execution to determine how much non-exempt property the judgment debtor has to apply toward the judgment. It then requires that before imprisonment may occur, the judgment debtor must be given a hearing on contempt for failure to obey, and be found in contempt by the trial court.

In addition, the majority overlooks the logic of *Freeman v. Heiman*, 426 F.2d 1050 (10th Cir.1970), in which the Tenth Circuit Court correctly concluded that § 850 did not violate the Okla. Const. art. 2, § 13 prohibition against imprisonment for

debt. The majority in the case at bar sidesteps *Freeman* on the grounds that the Tenth Circuit relied on decisions from jurisdictions having only statutory prohibitions against imprisonment for debts rather than state constitutional prohibitions like art. 2, § 13. However, *Freeman* relies on *Burrows I* as authority, and, as noted above, the Kansas Constitution contains a prohibition against imprisonment for debt.

The conclusion the Tenth Circuit reached about § 850 mirrors the determination of the Kansas Supreme Court concerning its "in aid of execution" statute, holding that the statutes were constitutional because they did not authorize imprisonment for debt but for contempt of court. This congruency is bolstered by the fact that the genesis of § 850 was the statute construed by the Kansas court in the *Burrows* cases.

The courts in *Freeman* and *Burrows* understood the purpose and procedure of statutes like § 850. Those decisions correctly interpreted the legislative intent for such "in aid of execution" statutes as assisting judgment creditors in discovering nonexempt property of judgment debtors in order to get satisfaction of judgments. Both courts further held that any imprisonment imposed was for contempt and not for failure to pay a debt. Hence, § 850 and Kansas' corresponding statute were held not violative of constitutional provisions.

My reading and understanding of the legislative intent of § 850 comports with that of the court in *Freeman*. Section 850, when properly construed, not only upholds the legislative intent which is clear in the language used, but also passes constitutional muster.

> "In deciding the constitutionality of statutes, a legislative act is presumed to be constitutional and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution. Whenever possible, statutes should be construed to uphold their constitutionality." *Reherman v. Oklahoma Water Resources Bd.*, 679 P.2d 1296, 1300 (Okla.1984).

This presumption of constitutional validity is strong, *Black v. Ball Janitorial Serv., Inc.*, 730 P.2d 510 (Okla.1986), and

the majority has failed to demonstrate how the statute is "clearly, palpably and plainly inconsistent" with art. 2, § 13. When read properly and applied correctly, the statute does not violate the constitutional provision.

I would deny Petitioner's application to assume original jurisdiction because it is premature, and allow the district court to proceed with its hearing on the citation for contempt.

I am authorized to state that Justice LAVENDER and Justice HARGRAVE join with me in the views expressed herein.