Dale SHIPMAN and Marla J. Shipman, Plaintiffs/Appellees,

v.

C.J. FRENCH, Defendant/Appellant.

No. 84385.

Court of Civil Appeals of Oklahoma, Division 3.

March 21, 1997.

Appeal from the District Court of Tulsa County, Oklahoma; Donald C. Lane, Judge.

Reversed and remanded with instructions.

C.J. French, Tulsa, Pro Se [1].

Katrina S. Bodenhamer, Bodenhamer & Levinson, Tulsa, Oklahoma, for Plaintiffs/Appellees.

MEMORANDUM OPINION

ADAMS, Chief Judge:

C.J. French appeals a trial court order, entered pursuant to a jury verdict, which found him guilty of indirect contempt of court and sentenced him to six months in the Tulsa County Jail unless he purged the contempt. French argues, *inter alia*, that the trial court's order violates his rights under Article 2, § 13 of the Oklahoma Constitution.[2] Because we agree that under the undisputed circumstances of this case French was held in contempt for failing to pay a money judgment or debt, we reverse.

The contempt proceeding arose out of a replevin action filed by Plaintiff/Appellees (the Shipmans) in which they sought the return of a 1992 Chevrolet Corsica automobile which French had taken into his possession. Although the Shipmans initially requested pre-judgment delivery of the car or a preliminary injunction prohibiting French from disposing of the car, no such order was entered.[3] The Shipmans moved for summary judgment in their favor, attaching relevant evidentiary materials demonstrating that they owned the car and that French had removed the car from their possession. French filed no response to the motion. The trial court sustained the Shipmans' motion and entered an alternative judgment (the replevin judgment) ordering French to re-

---

1. French's brief was prepared and filed by his then counsel, Shannon Davis of Tulsa, Oklahoma. Subsequent to briefing, we allowed Shannon Davis to withdraw, and French elected to proceed *pro se*.

2. According to this section, "[i]mprisonment for debt is prohibited, except for the non-payment of fines and penalties imposed for violation of law."

3. Apparently, because the Shipmans could not post the appropriate bond.

turn the car to the Shipmans or be liable for its value ($9,700). The trial court also ordered French to reimburse the Shipmans for certain expenses, costs and fees, with interest. The judgment made no specific finding that French had the car in his possession. A copy of the journal entry was mailed to French, but French neither returned the car nor paid for its value.

After the Shipmans commenced this contempt proceeding, French filed a motion seeking to vacate the replevin judgment. The trial court denied that motion,[4] and the contempt case proceeded to trial. The jury found French guilty of indirect contempt, and the trial court's sentence and this appeal followed.

According to French, because he disposed of the car prior to entry of the replevin judgment, the contempt judgment can only be seen as an attempt to imprison him for failing the pay the Shipmans the value of the car. He raised this issue in the trial court, and the Shipmans did not contest the truth of French's claim that he sold the car to a third party after the replevin case was filed but before the trial court entered the replevin judgment. However, the Shipmans contend French was collaterally estopped from denying that he had the car at the time of the replevin judgment because he did not contest that issue in the replevin action. According to the Shipmans, French could be properly held in indirect contempt for failure to return the car without violating Article 2, § 13.

The Shipmans' argument overlooks two critical factors. First, the replevin judgment did not determine that French had possession of the car on the date that judgment was entered nor was such a finding necessarily implied. The replevin judgment was alternative, i.e., it could be satisfied either by returning the car or paying the money. The trial court was not required to find that French still possessed the car in order to enter that judgment. Collateral estoppel, or estoppel by judgment, only prevents relitigation of issues which were actually determined in the prior proceeding. See Wa-

baunsee v. Harris, 610 P.2d 782 (Okl.1980). Because the issue of French's current possession of the car was not determined in the replevin case, he was not barred from litigating that issue in the contempt proceeding. As noted previously, there is no dispute about the fact that French did not possess the car at the time the replevin judgment was entered.

Second, the Shipmans' argument ignores the theory on which the contempt case was tried. Rather than focussing on French's failure to return the car, the Shipmans based their contempt case on evidence that French could afford to pay the car's value but wilfully refused to do so. Even if there were some dispute concerning whether French could have returned the car, it would be impossible on this record to determine whether the jury found French guilty because he did not return the car, a permissible finding if there was a dispute about French's possession on the date of the replevin judgment or about his ability to retrieve the car from the third party, or because he failed to pay the money when he could afford to do so, an impermissible finding because it violates Article 2, § 13.

There is no factual dispute concerning whether French could have complied with the replevin judgment by returning the car. He could not. The finding of contempt and subsequent sentence can only be based on French's failure to pay the Shipmans the value of the car, and amounts to imprisonment for failure to pay a debt, a violation of Article 2, § 13. See Lepak v. McClain, 844 P.2d 852 (Okla.1992). The trial court's judgment and sentence is reversed, and on remand the trial court is directed to vacate the order of confinement and exonerate French's bond.

REVERSED AND REMANDED WITH INSTRUCTIONS.

CARL B. JONES, P.J., concurs by reason of stare decisis with separate opinion.

GARRETT, J., concurs only by reason of stare decisis.

4. Denial of French's Motion to Vacate is not raised in the petition in error in this appeal, and it appears that order and the judgment the motion sought to vacate are final.

CARL B. JONES, Presiding Judge, concurring.

I concur by reason of stare decisis. I am constrained to follow the authority of *Lepak v. McClain,* and feel driven to comment.

In this case, we state that contempt will not lie when there is a finding that the party in contempt is found to have refused to pay money when he could afford to do so. The rational for this statement is *Lepak v. McClain,* 844 P.2d 852 (Okla.1992). *Lepak* and *Potter v. Wilson,* 609 P.2d 1278 (Okla. 1980), both refuse to acknowledge that imprisonment for contempt for non-payment of a debt where the coerced party has the money to comply is *not* imprisonment for debt but imprisonment *for willfully disobeying a court order.*

As aptly noted by Justice Simms in the *Lepak* case, supra, at 866–867:

> ... The majority's ruling fulfills the prophetic warning given by Justice Hargrave in his dissent to *Potter v. Wilson,* 609 P.2d 1278 (Okla.1980). In *Potter,* the terms of a divorce decree gave title to a jointly-owned enterprise to the wife along with the outstanding indebtedness of the business thereby holding the husband harmless for that debt. When the wife defaulted on the debt, the husband brought a citation for contempt against the wife requesting the district court to use her contempt powers to enforce the divorce decree. The wife applied for a writ of prohibition, and a bare majority of this Court held that Okla. Const. art. 2, § 13, barred the district court from coercing "payment of a civilly adjudicated claim for money" by imprisonment.
>
> In a dissent joined by Justices Barnes, Doolin and this writer, Justice Hargrave pointed out that the district court had the inherent power to use contempt to enforce its orders. He further stated:
>
> > "I feel the majority's rationale is as applicable to 12 O.S.1971 § 850 as it is to the instant proceeding, which fact is an indicia of the error promulgated here ..." 609 P.2d at 1282.

> Thus, in *Potter,* this Court took a large step toward erasing unquestioned inherent power of a court to enforce its orders by contempt. The majority in the instant case is taking another step in stripping the courts of their power.

> \* \* \* \*

> In addition, the majority overlooks the logic of *Freeman v. Heiman,* 426 F.2d 1050 (10th Cir.1970), in which the Tenth Circuit Court correctly concluded that § 850 did not violate the Okla. Const. art. 2, § 13 prohibition against imprisonment for debt.

> Justice Hargrave's dissent in *Potter v. Wilson,* supra then continues at p. 1282:

> > ... as stated in the dawning days of our Republic in *Respublica v. Oswald,* 1 Dall. 319, 329, 1 L.Ed. 155, 160 (1788), by Chief Justice McKean, cited in part in *Smith v. Speed,* 11 Okl. 95, 66 P. 511 at 515 [(1901)]:
> >
> > > "... Some doubts were suggested, whether even a contempt of the court was punishable by attachment; but not only my brethren and myself, but likewise all the Judges of England, think, that without this power no court could possibly exist;—nay, that no contempt could indeed, be committed against us, we should be so truly contemptible. The law upon the subject is of immemorial antiquity; and there is not any period when it can be said to have ceased, or discontinued ...".

> The prophetic warning has come home to roost.